CLINTON CARPET COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 7006.   Promulgated April 14, 1950.

*Peter L. Wentz, Esq.*, and *Milton E. Carter, Esq.*, for the petitioner. *Gerald W. Brooks, Esq.*, for the respondent.

OPINION.

Murdock, *Judge*: The parties are agreed that the petitioner is entitled to have its excess profits net income computed by the use of the excess profits credit based on income. See sec. 711 (a) (1) and sec. 713. They are also agreed on the amount of the petitioner's base period excess profits net income before adjustment for any relief to which the petitioner may be entitled under section 722 (b) (5). The petitioner does not challenge the Commissioner's computation of the credit except as section 722 (b) (5) may apply. They differ only as to whether the base period excess profits net income should be increased by eliminating the deduction of $77,823.60 which was claimed and allowed in each of the base years. The petitioner claims that the deduction should be eliminated in order to give it the relief to which it is entitled under section 722 (b) (5). The petitioner bases its claim entirely upon that section which requires the taxpayer to establish (1) that the tax without relief is excessive and discriminatory, and (2) "what would be a fair and just amount representing normal earnings to be used as a constructive average base period net income for the purpose of an excess profits tax based upon a comparison of normal earnings and earnings during an excess profits tax period." It provides that the first requirement is met if the "average base period net income is an inadequate standard of normal earnings because * * * of any other factor affecting the taxpayer's business which may reasonably be considered as resulting in an inadequate standard of normal earnings during the base period" and the granting of relief would not be inconsistent with underlying principles and limitations of subsection (b).

The situation existing in 1931 immediately before the petitioner acquired the sales contract was that the contract would terminate on December 31, 1940, and it was owned by a third party. Thus, the petitioner could not make any sales or profits during the term of the contract as sales agent of American for the distribution of the Ozite products unless it acquired the contract. It acquired the contract from the third party for $765,265.38 and thereafter claimed and was allowed deductions to amortize the cost of the contract over its re-

maining life. The contract was not canceled or extended thereafter, or changed in any way which would effect a change in the amortization period. The deductions claimed and allowed during those 118 months, including those of $77,823.60 for each of the base period years, were properly allowed, as both parties hereto recognize. The theory upon which those deductions were properly allowed was that there was a direct cause and effect relation between the proportionate cost of the contract deducted in each year and the sales and earnings of that year from the Ozite products and, consequently, the deduction should offset the income of that year rather than that of any other year in order clearly to reflect income and at the same time to permit tax-free recovery of the contract cost. *United States* v. *Ludey,* 274 U. S. 295. Cf. *Helvering* v. *Virginian Hotel Corporation of Lynchburg,* 132 Fed. (2d) 909; affd., 319 U. S. 523. Each deduction was a reasonable allowance, computed upon a "straight line" time basis, for that year, representing the exhaustion of the asset (contract) thus used in the business during the year. *Copifyer Lithograph Corporation,* 12 T. C. 728; *Terminal Realty Corporation,* 32 B. T. A. 623.

Was the average base period net income an inadequate standard of normal earnings because of the taxpayer's right to the annual deduction for amortization or exhaustion of the cost of the contract purchased in 1931? Can the right to that deduction "reasonably be considered as resulting in an inadequate standard of normal earnings during the base period"? If those questions can be answered in the affirmative, then, would the exclusion of that deduction result in a fair and just amount representing normal earnings to be used as constructive average base period net income for the purpose of an excess profits tax based upon a comparison of normal earnings and earnings during an excess profits tax period?

The Senate Finance Committee, in discussing this provision while considering the Revenue Act of 1942, indicated it was to apply if "the business of the taxpayer during the base period was adversely affected by any other factor, resulting in an average base period net income which is an inadequate standard of normal earnings * * *." S. Rept. No. 1631, 77th Cong., 2d sess., sec. 221, p. 202. The law provides that the "factor" must cause "an inadequate standard of normal earnings during the base period." Thus, attention is focused upon any factor adversely affecting the earnings of the base period and no relief is granted if those earnings were normal for that period. The taxpayer, during the base period and during its entire existence prior thereto, had known no other standard of earnings than its net income after subtracting the deduction in question. The deduction was neither unusual nor peculiar in the experience of the petitioner. Cf. *Philadelphia, Germantown & Norristown Railroad Co.,* 6 T. C. 789;

sec. 722 (b) (1). The normal earnings from the operation of the business during each of those years were the earnings after deducting a proportionate part of the cost of the contract, without which there would have been no earnings for the year. The net earnings, after deducting other deductible items but before or without deducting the amount representing a part of the cost of the contract allocable to those years, can not be regarded as the normal earnings of the base period. That would be to regard, as normal, earnings which this particular taxpayer could not have earned. It had to pay for the privilege of making the sales of those years and the amount it had to pay was not only a proper cost or ordinary and necessary expense of those sales, but was absolutely essential to the operation of the business. The actual net earnings were also its operating profits before taxes and the petitioner's argument to the contrary is unsound. Nor were its earnings "distorted" by the amortization deduction.

The annual deduction for amortization of the sales contract during the base period can not "reasonably be considered as resulting in an inadequate standard of normal earnings during the base period." In other words, the petitioner has failed to establish that its "base period net income otherwise determined under this Chapter" differed from "normal earnings" or was "an inadequate standard of normal earnings" for that period. A portion of its excess profits tax year earnings based upon actual earnings is relieved from tax through the excess profits credit based on income, as in the case of other taxpayers. It has not shown that it is entitled to any relief because of a factor described in section 722 (b) (5) which would show that its excess profits taxes without relief were excessive or discriminatory. It is not necessary to consider whether it has established "what would be a fair and just amount representing normal earnings to be used as a constructive average base period net income for the purpose of an excess profits tax based upon a comparison of normal earnings and earnings during an excess profits tax period."

The petitioner argues that, even though its actual net earnings after the deductions in question might be regarded as normal earnings for the base period in one sense, nevertheless, they were not "normal" for the purpose of comparing them with the tax year earnings in order to determine how much of the latter are in excess of what should properly be regarded as normal earnings of the tax years, since the two are not computed upon the same basis, the one being earnings after a large deduction for exhaustion of the contract and the other being the earnings without using any such deduction. It points out that the difference is not due to the war, but to the fact that American happened to give notice in 1931 which terminated the contract in 1940, after the base period but before the

excess profits tax years, and if the termination date had happened to be either before the base period or after the tax years, the tax result would be exactly that contended for and no relief would be necessary. "It is this fortuitous coincidence of the amortization period with the base period which prevents petitioner's actual base period net income from being a fair standard of normal earnings." It contends that its earnings for each tax year after the exhaustion of the contract should be compared with normal earnings of the base years likewise computed without any deduction for amortization of the contract, and that such "normal earning" could have been anticipated at December 31, 1939. That might have been a forceful argument to Congress to grant relief in such cases. However, it is not in accordance with section 722 (b) (5).

American was not paid any amount for the contract. It apparently needed and wanted a sales agent at all times material hereto and, when the contract expired in 1940, the petitioner, as might have been expected, continued to act as sales agent. It had no contract cost to deduct during those years and that might have been anticipated. No doubt the contract was of less importance between the petitioner and its parent than it would have been between a third party and American. Yet the fact remains that the petitioner could not have earned any income during its base period had it not bought out and taken the place of the third party. Its actual earnings for the period were normal for that period.

The petitioner looks at the earnings of the tax years which were earned without the payment of anything for the right to earn them and says that the actual earnings of the base period years are not proper for the purpose of comparison with those of the tax years unless the deduction taken for the cost of the right to represent American during the base years is eliminated. Unfortunately for the petitioner that is not the scheme of the statute. It does not allow the taxpayer to look at the tax years and then try to determine what would be normal earnings of those years to compare with them, but requires instead that the taxpayer look at the base years, closing its eyes to events taking place after December 31, 1939, to determine what were normal earnings of the base years. Cf. section 722 (b) (1), (2), (3), and all of (4) except the latter portion dealing with special situations not here material. A reasonable person looking at the actual earnings for the base period years could say that they were not less than normal, even though he knew that there would be no amortization deduction after 1940. What would be normal thereafter is a different question, but one which need not be decided herein. Congress happened to choose the particular method of taxation and relief set forth in the statute, including for present purposes the use of the years 1936 through

1939 as the base period. It tried to make the statute flexible enough to take care of "unpredictable" abnormal cases and it confidently expected the provisions to be intelligently and sympathetically administered. Ways & Means Committee Report, No. 146, 77th Cong., 1st sess., p. 2. Still, this Court can give only such relief as the statute authorizes where it has been specific. Here, it happens, no relief is available under the words of section 722 (b) (5).

Reviewed by the Special Division.

*Decision will be entered for the respondent.*