SANTEE RIVER HARDWOOD COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 37712. Filed June 29, 1956.

*Stanley Worth, Esq.*, for the petitioner.
*Philon Wigder, Esq.*, for the respondent.

OPINION.

Pierce, *Judge:* Petitioner's principal contention is that it qualifies for relief under subsection (b) (4) of section 722, or in the alternative, under subsection (b) (5). In support of this contention, it presents a threefold argument: First, that during most of the base period it was compelled, by the terms of the Santee contract, to pay abnormally high prices for stumpage, and that this had a depressive effect on its base period earnings; second, that toward the end of the base period, it changed the character of its operations by terminating the Santee contract and purchasing the White and Friant tract, from which it was able to acquire timber at a much lower stumpage rate; and third, that if it had been able to make this change 2 years earlier, its average base period earnings would have been substantially higher. The Santee contract, referred to, is the one which petitioner acquired at the time of its incorporation from its parent company; and under the terms of this contract, the stumpage price of the timber increased on a month-to-month basis as the timber was cut, with the result that the prices paid during all of the base period were from $3 to $4 per thousand feet higher than they were in 1929 when operations under the contract began. The contract provided that this acceleration in price was to be "in lieu of interest" on the basic $7 price.

It is questionable whether petitioner's termination of the Santee contract and purchase of the White and Friant tract constitutes a "change in the character of the business," or more specifically a "change in the operation," within the intendment of section 722 (b) (4). Normally, a change to an assertedly more advantageous arrangement for the purchase of material to be manufactured is regarded to be routine, and not to be such a change as will provide the basis for granting relief under subsection (b) (4). Cf. *Austin Co.*, 22 T. C. 703, 716;

*Wisconsin Farmer Co.*, 14 T. C. 1021, 1029; Regs. 112, sec. 35.722–3 (*d*). In the case at bar, petitioner was engaged at all times, both before and after the change of its source of supply, in the manufacture and sale of lumber of the same general type and by means of the same method of operation. And, it does not appear that either petitioner or the industry to which it belonged has ever established any standard plan of operation, based upon any particular type of contract under which timber rights are acquired.

However, assuming *arguendo* that a change in the operation did occur, such change is important only if it resulted in an increase of normal earnings which is not adequately reflected by petitioner's average base period net income. *Wisconsin Farmer Co.*, *supra*. The evidence here does not establish, in our opinion, that petitioner's change in its source of supply meets this test. It is true that the gross stumpage price paid under the Santee contract was greater than that on the White and Friant operation. But the difference is not nearly so great as appears at first glance. The basic price of the stumpage under the Santee contract was $7 per thousand feet, and the difference between that and the $11.886 actually paid represented a charge "in lieu of interest" on the basic $7 price; whereas the stumpage cost for the White and Friant timber carried no such charge for interest, because interest was paid separately from the stumpage. Also, the stumpage price paid in respect of the White and Friant tract was more than $3.573, as suggested by petitioner; for, since the purchase price of the tract was $65,000 and 14,209,000 feet were cut therefrom, the correct stumpage rate, exclusive of interest, was approximately $4.58 per thousand feet. Thus, when the stumpage prices for both tracts are adjusted to the correct basic amounts, there is a spread between the two of only about $2.42 per thousand feet; and this spread may be accounted for by two other factors. In the first place, the quality of the timber on the Santee tract was superior to that on the White and Friant tract; as is shown by our findings of fact, the petitioner was able to manufacture therefrom a much higher percentage of the better grades of lumber and it was able to sell the same at higher prices. In the second place, the cost of operations on the Santee tract was much lower than on the White and Friant tract; as shown in our Findings of Fact, petitioner's logging expenses in 1939 were $7.92 per thousand feet as compared to $15.27 in 1941, when it was operating on the White and Friant tract.

Finally, it must be noted that petitioner's average base period net income of approximately $27,000 per year is considerably higher than its income for any pre-base period year. In the light of this and all the foregoing facts, we are not convinced that petitioner's base period earnings were depressed, or that those earnings would have been any

greater if it had begun operations on the White and Friant tract 2 years earlier.

We hold, therefore, that petitioner has not shown that it qualifies for relief under section 722 (b) (4).

As to petitioner's claim under subsection (b) (5), so far as it relates to the alleged change in the character of the business, its counsel conceded on brief that it "relies primarily upon (b) (4) for qualification, but that as an anchor to the windward it also claims relief under (b) (5)." It need only be pointed out that, where facts properly applicable to a claim under one of the other subsections of section 722 (b) have been found insufficient to support such claim, these same facts cannot be relied upon to support a claim under subsection (b) (5). *Constitution Publishing Co.*, 23 T. C. 19; *Granite Construction Co.*, 19 T. C. 163, 173; *Clermont Groves, Inc.*, 17 T. C. 1616; *George Kemp Real Estate Co.*, 12 T. C. 943.

Petitioner also claims relief under section 722 (b) (5), on the ground that no depreciation deductions were taken or allowable in the taxable year 1941 on the assets that had been fully depreciated and on which substantial depreciation deductions were taken in the base period years. This claim is identical to that which was presented, and decided adversely to the taxpayer, in *Park & 46th Street Corporation*, 14 T. C. 588. See also *Clinton Carpet Co.*, 14 T. C. 581, wherein we pointed out the lack of any provision in the statute for comparing base period and post-base period earnings.

Reviewed by the Special Division.

*Decision will be entered for the respondent.*