FEZANDIE & SPERRLE, INC., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 112521, 1118. Promulgated December 10, 1945.

*Richard W. Wilson, Esq.*, and *Franklin C. Ellis, C. P. A.*, for the petitioner.

*Z. N. Diamond, Esq., J. D. Bierman, Esq.*, and *Sidney B. Gambill, Esq.*, for the respondent.

1190

OPINION.

OPPER, *Judge*: Dealing with the reconstructed base period of section 722 for excess profits tax purposes brings to mind Mr. Churchill's reference, in a different context, to a "riddle inside a mystery wrapped in an enigma." Procedure under that section seems to call for founding hypothesis on assumption based on supposition. The present question reduces to how far we may properly go in presupposing the existence of admittedly imaginary circumstances.

The change in its business upon which petitioner premises its application actually took place at the very close of the base period. At that time, the American member of the notorious chemical cartel made an arrangement with petitioner by which it was in effect constituted the foreign selling agent for the color and dye products produced under the cartel patents. This arrangement became possible because of the release of the cartel member and of the foreign territory from restrictions effective until the outbreak of the European War. The increase in business caused by the new arrangement is reflected for only one of the forty-eight base period months. To that extent of course, petitioner has the benefit of increased profits without resort to section 722.

For purposes of comparison with its income during excess profits tax years, however, and in order thereby to reduce the amount which would otherwise constitute statutory excess profits, petitioner claims to be entitled to substitute for its actual net income in the entire base period a theoretical, or constructive, average based upon the assumption that the asserted change in its business occurred before it actually

did. Respondent does not appear to concede that what happened in the last month of the base period constituted a change in business as contemplated by the relief provisions.[1] For our purposes, however, it will be assumed that it did.

Notwithstanding this assumption, petitioner can succeed only if it has established both that "the tax computed \* \* \* (without the benefit of this section) results in an excessive and discriminatory tax," and also "what would be a fair and just amount representing normal earnings to be used as a constructive average base period net income \* \* \*."[2]

In discussing these requirements, it will prove unnecessary to attempt a nice separation of the second requirement from the first, which

---

[1] SEC. 722. \* \* \*

\* \* \* \* \* \* \*

(b) TAXPAYERS USING AVERAGE EARNINGS METHOD.—The tax computed under this subchapter (without the benefit of this section) shall be considered to be excessive and discriminatory in the case of a taxpayer entitled to use the excess profits credit based on income pursuant to section 713, if its average base period net income is an inadequate standard of normal earnings because—

\* \* \* \* \* \* \*

(4) the taxpayer, either during or immediately prior to the base period, commenced business or changed the character of the business and the average base period net income does not reflect the normal operation for the entire base period of the business. If the business of the taxpayer did not reach, by the end of the base period, the earning level which it would have reached if the taxpayer had commenced business or made the change in the character of the business two years before it did so, it shall be deemed to have commenced the business or made the change at such earlier time. For the purpose of this subparagraph, the term "change in the character of the business" includes a change in the operation or management of the business, a difference in the products or services furnished, a difference in the capacity for production or operation, a difference in the ratio of non-borrowed capital to total capital, and the acquisition before January 1, 1940, of all or part of the assets of a competitor, with the result that the competition of such competitor was eliminated or diminished. Any change in the capacity for production or operation of the business consummated during any taxable year ending after December 31, 1939, as a result of a course of action to which the taxpayer was committed prior to January 1, 1940, or any acquisition before May 31, 1941, from a competitor engaged in the dissemination of information through the public press, of substantially all the assets of such competitor employed in such business with the result that competition between the taxpayer and the competitor existing before January 1, 1940, was eliminated, shall be deemed to be a change on December 31, 1939, in the character of the business. \* \* \*

[2] SEC. 722. GENERAL RELIEF—CONSTRUCTIVE AVERAGE BASE PERIOD NET INCOME.

(a) GENERAL RULE.—In any case in which the taxpayer establishes that the tax computed under this subchapter (without the benefit of this section) results in an excessive and discriminatory tax and establishes what would be a fair and just amount representing normal earnings to be used as a constructive average base period net income for the purposes of an excess profits tax based upon comparison of normal earnings and earnings during an excess profits tax period, the tax shall be determined by using such constructive average base period net income in lieu of the average base period net income otherwise determined under this subchapter. In determining such constructive average base period net income, no regard shall be had to events or conditions affecting the taxpayer, the industry of which it is a member, or taxpayers generally occurring or existing after December 31, 1939, except that, in cases described in the last sentence of section 722 (b) (4) and in section 722 (c), regard shall be had to the change in the character of the business under section 722 (b) (4) or the nature of the taxpayer and the character of its business under section 722 (c) to the extent necessary to establish the normal earning to be used as the constructive average base period net income.

has been paraphrased [3] as a showing that the "taxpayer's net income for those years is an inadequate reflection of its normal operation for the entire [base] period. * * * *" [4] Stated from either standpoint, and without belaboring the element of burden of proof, the question narrows to whether on this record we are authorized to presuppose an earlier operation by the petitioner of the different type of business and the existence of accompanying earnings substantially greater than those actually received.

The first step in creating the constructive expanded base for which petitioner contends would be to assume that the change in business upon which it relies took place at or before the beginning of the base period and was operative throughout its course. So far the process would be simple.

But upon the present facts that premise immediately and automatically requires the anterior assumption of another, namely, the existence of occurrences upon which its expanded business was obviously conditioned. No small part of the difficulty is occasioned by the almost fantastic quality of the gift to petitioner of a ready-made export business, complete with customers, products, protection against competition, and the consequent inevitable profit. This was no mere instance of the withdrawal of competing foreign commerce and the resulting liberation of a previously closed market. Petitioner did not produce a new business, solicit new customers, or discover new sources of salable materials. It was selected to be the heir to all of this under circumstances which would have to be, and in fact were, the product of an unprecedented and unique external situation.

It requires no strain upon the imaginative process to assume, even if the record on the subject were less clear, that the world-wide cartel in whose business petitioner participated would not have surrendered its monopolistic position and the ensuing profit voluntarily. It did so for one reason only—a reason inseparably connected with and incapable of consideration apart from the outbreak of the world conflict in the September previous.

To assume that petitioner could have engaged in its expanded business at an earlier period thus carries as a prerequisite the preliminary assumption of petitioner's accession to the export business enjoyed by the cartel. This in turn is inconceivable without the further presupposition of the outbreak of war, which accordingly becomes the necessary premise to the existence of the expanded business.

---

[3] Tarleau, "Section 722: Safety Valve of the Excess Profits Tax," 10 Law and Contemp. Problems, 43.

[4] See also Senate Rept. No. 1631, 77th Cong., 2d sess., p. 36:

"To come within the general relief provisions, the taxpayer, in existence during the base period, must show that the excess profits tax * * * was excessive and discriminatory and that the average base period net income was not a fair measure of normal earnings. * * *"

Whatever may be said of the possibility for present purposes of making the remaining assumptions, we think this last condition clearly inadmissible. The date selected for permissible changes in business was January 1, 1940. Had petitioner's expansion, or at least the plans therefor, developed subsequently, its claim would be automatically eliminated. The date itself, however, can not be without significance. From the legislative history it seems clear that it was chosen as a rough approximation of the time when war distorted the domestic economy and gave rise to the need for a limitation on excessive profits.[5] To assume as a postulate for further hypotheses that the war had its inception before it did is thus fundamentally at variance with the basic concept of the excess profits tax provision. We think this sufficient to dispose of the present question, and find it unnecessary to discuss the many remaining controversies of principle and theory raised by the parties and other participating counsel. For present purposes, we feel it sufficient to conclude that any assumption of higher profits in the base period which requires as an inescapable condition the supposition of the earlier creation of the war situation furnishes no ground for application of the provisions of section 722. Whatever elements of a taxpayer's circumstances, or of general business, may be assumed to have been operative for periods earlier than the actual facts warrant, the war conditions, which gave rise to the enactment of the Excess Profits Tax Act itself, can not be given a predated effect for any purpose.

It is undoubtedly true, as petitioner suggests, that section 722 must not be so construed as to eliminate all possibility of relief in all cases. To permit it here, however, would seem to require its application to every other case and not to restrict it to a situation which by any description could be called abnormal. Every corporation which, because of European War orders or of the American rearmament program, embarked upon the production of a different article or extended its business into different fields would be entitled under that construction of section 722 (b) (4) to have its base period earnings expanded to incorporate the assumption that the war and the consequent increased profits had, contrary to history, commenced at a sufficiently early date to be typical of the base period. The very profits which it was the intention of Congress to recapture in substantial part would then escape the excess profits tax on the ground that its application to them would be inequitable. "Normal" profits during the

---

[5] "In order to eliminate consideration of the effects of the war, it is provided that, in determining the constructive average base period net income, no regard shall be had to events or conditions affecting the taxpayer, an industry of which it is a member, or taxpayers generally, occurring or existing after December 31, 1939. Thus high war prices, swollen demand, and other factors which would not be normal prior to the imposition of the excess profits tax shall be eliminated in the computation of the normal or average earning capacity of the taxpayer." House Rept. No. 2333, 77th Cong., 2d sess., p. 142.

actual base period do not call for inflation for any such reason in order to prevent unequal or unfair comparison with those made subsequently when the same conditions admittedly influenced corporate earnings.

Reviewed by the Special Division.

*Decision will be entered under Rule 50.*