OPINION. Rice, Judge: Since petitioner was organized after December 31, 1939, it may only use the invested capital method in computing its credit for excess profits tax purposes. See section 712 (a) of the Code.[1] Petitioner recognizing this, asks for relief under section 722 •(c) (2) and 722 (c) (3) of the Code.[2] In order to qualify for relief under section 722 (c) a taxpayer must not only prove that it is qualified for relief under one of the provisions of such subsection, but must also show a fair and just amount representing normal earnings for use as a constructive average base period net income within the requirements of section 722 (a) .[3] Establishment of one of the factors without the other is ineffectual for obtaining relief. Danco Co., 14 T. C. 276 (1950). It is unnecessary in the instant case to determine whether the petitioner has sufficiently met the requirements necessary under section 722 (c), since it has failed to prove that it would have made a profit, or even remained in business, during the base period years. It has therefore failed to establish a fair and just amount representing normal earnings for use as a constructive average base period net income as required by section 722 (a). While any relief under section 722 must be based upon assumptions, due to the very nature of the relief afforded, it is still incumbent upon the party requesting such relief to establish some basis upon which such assumptions can be grounded. If every step of the way is shrouded with doubts as to its value, or indeed its plausibility, a serious question is immediately raised as to whether any relief is justified. In this case we have been asked to assume too much. No evidence has been offered to establish just how much time or money was actually expended during the base period years in aircraft assembly jig tooling. All that we have been given is the testimony based on records of one aircraft manufacturer of southern California. And even in this instance, results were not based on actual figures, but on assumptions of an individual, unsubstantiated in any respect. We have been asked to assume that for every million dollars of net sales 40,000 hours have gone into aircraft tooling, that 40 per cent of the tooling hours was for assembly jig construction, that a man would put in 166% productive working hours a month, and further assumptions based upon these. Then we are requested to apply these figures to the actual sales of southern California aircraft manufacturers during the base period years. While such a procedure might not be unreasonable where some substantiation could be given to such figures, in the instant case there is none. In addition, an even more basic doubt exists; namely, would the petitioner have been successful financially if it had gone into business during the base period years? Aircraft manufacturers were of the opinion that construction of aircraft assembly jigs was one aspect of aircraft production which could not be subcontracted successfully. They so advised Gray when he discussed the problem with them. Petitioner argues that despite this opposition, had it started business during the base period years, its skill and efficiency in construction of the assembly jigs would have overcome such opposition and it would have been successful in obtaining contracts for construction of an amount representing a skimming off of the peak loads experienced by aircraft manufacturers. Since various manufacturers would have their peak loads at different times there would be sufficient business to make petitioner a success. While theoretically such a possibility might have existed, petitioner has failed to convince us that a business engaged exclusively in the construction of aircraft assembly jigs would have been a financial success. A primary factor in the hesitancy of aircraft manufacturers to subcontract jig construction was an economic one. Petitioner would have had to operate so economically that it would have been cheaper for manufacturers to subcontract and allow petitioner its margin of profit than to do the work themselves. Testimony by an official of North American Aviation, Inc., was to the effect that any subcontracting which they did was negligible during the base period; and, om-the basis of the record in this case, there is no assurance that the policy of North American was different from that of other southern California aircraft manufacturers. Petitioner’s witnesses who testified to the availability of work for subcontracting during the base period years were technical men, and not persons in a position to decide subcontracting policy matters. Respondent’s witnesses were persons of authority who testified that it was not the policy of aircraft manufacturers to subcontract assembly jig construction during the base period. It was only after the occurrence of the war emergency and the emphasis on speed of production (with many cost-plus-fixed-fee contracts awarded aircraft companies by the United States Government) that subcontracting of jig construction was done on any large scale. And as soon as the contracts of the aircraft manufacturers and the United States Government were terminated by the United States such subcontracts were cancelled. By the end of 1946 no one was in the business of constructing assembly jigs exclusively on subcontract from aircraft manufacturers. Such facts raise a very strong inference that a business such as petitioner’s was successful merely because of the war time emergency. It grew up with the war, was successful because of the war, and ceased with the ending of hostilities.. Excess profits taxes were imposed not only to raise revenue, but to take the “excess profits out of war.” Petitioner’s excess profits are exactly the type of profits such taxing provisions were intended to cover. Fezandie & Sperrle, Inc., 5 T. C. 1185 (1945). Petitioner has failed to show any facts which could be used to establish a fair and normal profit during the base period years to form a framework for reconstruction of a base period net income under section 722 (a). Reviewed by the Special Division. Decision will be entered for the respondent. SEC. 712. EXCESS PROFITS CREDIT — ALLOWANCE. (a) Domestic Corporations. — In the case of a domestic corporation which was in existence before January 1, 1940, the excess profits credit for any taxable year shall be an amount computed under section 713 or section .714, whichever amount results in the lesser tax under this subchapter for the taxable year for which the tax under this subchap-ter is being computed. In the case of all other domestic corporations the excess profits credit for any taxable year shall be an amount computed under section 714. (For allowance of excess profits credit in case of certain reorganizations of corporations, see section 741.) SBC. 722. GENERAL RELIEF — CONSTRUCTIVE AVERAGE BASE PERIOD NET INCOME. [[Image here]] (c) Invested Capital Corporations, Etc. — The' tax computed under this subchapter (without the benefit of this section) shall be considered to be excessive and discriminatory in the case of a taxpayer, not entitled to use the excess profits credit based on income pursuant to section 713, if the excess profits credit based on invested capital is an inadequate standard for determining excess profits, because — . • ***-*** (2) the business of the taxpayer is of a class in which -capital is not an important income-producing factor, or (3) the invested capital of the taxpayer is abnormally low. In such case for the purposes of this subchapter, such taxpayer shall 'be considered to be entitled to use the excess profits credit based on income, using the constructive average base period net income determined under subsection (a). For the purposes of section 713 (g) and section 743, the beginning of the taxpayer’s first taxable year under thiB sub-chapter shall be considered' to be that date after which capital additions and capital reductions were not taken into account for the purposes of this subsection. SEC. 722. GENERAL RELIEF — CONSTRUCTIVE AVERAGE BASE PERIOD NET INCOME. (a) General Rule. — In any case in which the taxpayer establishes that the tax computed under this subchapter (without the benefit of this section) results in an excessive and discriminatory tax and establishes what would be a fair and just amount representing normal earnings to be used as a constructive average base period net income for the purposes of an excess profits tax based upon a comparison of normal earnings and earnings during an excess profits tax period, the tax shall be determined by using such constructive average base period net income in lieu of the average base period net income otherwise determined under this subchapter. In determining such constructive average base period net income, no regard shall be had to events or conditions affecting the taxpayer, the industry of which it is a member, or taxpayers generally occurring or existing after December 31, 1939, except tha£ in the cases described in the last sentence of section 722 <b) (4) and in section 722 (c), regard shall be had to the change in the character of the business under section 722 (b) (4) or the nature of the taxpayer and the character of its business under section 722 (c) to the extent necessary to establish the normal earnings to be used as the constructive average base period net income.