PRATT & LETCHWORTH COMPANY, INC., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 29502. Promulgated March 25, 1954.

*Sol Goodman, Esq.*, for the petitioner.
*John Clark, Esq.*, for the respondent.

OPINION.

BRUCE, *Judge:* Petitioner alleges that its excess profits taxes for the taxable periods January 1, 1940, to August 31, 1940; year ended August 31, 1941; and year ended August 31, 1942, are excessive and discriminatory and here seeks relief under the provisions of section 722, Internal Revenue Code. Specifically, petitioner invokes subparagraphs (2), (4), and (5) of section 722 (b).[1]

---

[1] SEC. 722. GENERAL RELIEF—CONSTRUCTIVE AVERAGE BASE PERIOD NET INCOME.

(a) GENERAL RULE.—In any case in which the taxpayer establishes that the tax computed under this subchapter (without the benefit of this section) results in an excessive and discriminatory tax and establishes what would be a fair and just amount representing normal earnings to be used as a constructive average base period net income for the purposes of an excess profits tax based upon a comparison of normal earnings and earnings during an excess profits tax period, the tax shall be determined by using such constructive average base period net income in lieu of the average base period net income otherwise determined under this subchapter. In determining such constructive average base period net income, no regard shall be had to events or conditions affecting the taxpayer, the industry of which it is a member, or taxpayers generally occurring or existing after December 31, 1939, except that in the cases described in the last sentence of section 722 (b) (4) and in section 722 (c), regard shall be had to the change in the character of the business under section 722 (b) (4) or the nature of the taxpayer and the character of its business under section 722 (c) to the extent necessary to establish the normal earnings to be used as the constructive average base period net income.

(b) TAXPAYERS USING AVERAGE EARNINGS METHOD.—The tax computed under this subchapter (without the benefit of this section) shall be considered to be excessive and discriminatory in the case of a taxpayer entitled to use the excess profits credit based on income pursuant to section 713, if its average base period net income is an inadequate standard of normal earnings because—

* * * * * * *

(2) the business of the taxpayer was depressed in the base period because of temporary economic circumstances unusual in the case of such taxpayer or because of the fact that an industry of which such taxpayer was a member was depressed by reason of temporary economic events unusual in the case of such industry,

* * * * * * *

(4) the taxpayer, either during or immediately prior to the base period, commenced business or changed the character of the business and the average base period net income does not reflect the normal operation for the entire base period of the business. If the business of the taxpayer did not reach, by the end of the base period, the earning level

The petitioner bases its claim for relief under section 722 (b) (2) upon the existence of the contract with W. H. Miner, Inc., during the 5-year period immediately prior to the base period. Petitioner contends that the contract restricted its opportunities to obtain customers in that the majority of its production was committed under the contract to W. H. Miner, Inc. Petitioner further contends that this restriction resulted in a lack of customers and a depression of its business during the base period. It is respondent's position that, even if petitioner's business was depressed during the base period and for the reason stated, the depression was not due to "* * * temporary economic circumstances unusual in the case of such taxpayer * * *" within the purview of the statute invoked.

We think respondent's position is well taken. The alleged temporary and unusual economic depression, if one existed, was admittedly self-imposed. The alleged depression was brought on by the managerial decision, internally determined, to enter into the 5-year contract with W. H. Miner, Inc. The contract was, in fact, instigated by petitioner's president.

In the Bulletin on Section 722 of the Internal Revenue Code, part III, at page 16, issued by the Commissioner on November 2, 1944, the scope and intendment of section 722 (b) (2) and of the term "economic circumstances" used therein are explained as follows:

The term "economic" includes any event or circumstance, general in its impact or externally caused with respect to a particular taxpayer, which has repercussions on the costs, expenses, selling prices, or volume of sales of either an individual taxpayer or an industry. Thus, not every event or circumstance which has an adverse effect on a taxpayer's profits may serve to qualify that taxpayer for relief under subsection (b) (2). First, the temporary and unusual character of the circumstance or event must be clearly established. Second, the cause of the temporary depression must be shown to be external to the taxpayer, in the sense that it was not brought about primarily by a managerial de-

which it would have reached if the taxpayer had commenced business or made the change in the character of the business two years before it did so, it shall be deemed to have commenced the business or made the change at such earlier time. For the purposes of this subparagraph, the term "change in the character of the business" includes a change in the operation or management of the business, a difference in the products or services furnished, a difference in the capacity for production or operation, a difference in the ratio of nonborrowed capital to total capital, and the acquisition before January 1, 1940, of all or part of the assets of a competitor, with the result that the competition of such competitor was eliminated or diminished. Any change in the capacity for production or operation of the business consummated during any taxable year ending after December 31, 1939, as a result of a course of action to which the taxpayer was committed prior to January 1, 1940, or any acquisition before May 31, 1941, from a competitor engaged in the dissemination of information through the public press, of substantially all the assets of such competitor employed in such business with the result that competition between the taxpayer and the competitor existing before January 1, 1940, was eliminated, shall be deemed to be a change on December 31, 1939, in the character of the business, or

(5) of any other factor affecting the taxpayer's business, which may reasonably be considered as resulting in an inadequate standard of normal earnings during the base period and the application of this section to the taxpayer would not be inconsistent with the principles underlying the provisions of this subsection, and with the conditions and limitations enumerated therein.

cision. A taxpayer cannot qualify for relief under subsection (b) (2) because its earnings were temporarily reduced in the base period in consequence of its own business policies, internally determined * * *

The foregoing provision, which has often been approved by this Court, *Granite Construction Co.*, 19 T. C. 163, is applicable to the instant case and disposes of petitioner's claim under section 722 (b) (2).

There also exist additional reasons for denying the relief sought under subsection (b) (2). Although the contract with W. H. Miner, Inc., was unique in the corporate life of petitioner, the resulting restriction on sales promotion from which the depression allegedly stemmed was neither unusual nor temporary. Petitioner's sales opportunities were similarly restricted even without the contract during the period 1920 to 1931 and throughout the base period by the demands of W. H. Miner, Inc., which purchased the bulk of petitioner's production. Furthermore, petitioner's argument that the termination of the contract with W. H. Miner, Inc., allowed it to obtain more customers is not supported by the evidence. During the base period a much greater percentage of petitioner's total production was sold to W. H. Miner, Inc., and petitioner had far fewer customers than during the period 1931 through 1935 when the contract was in effect. Also, petitioner has not shown that its business was depressed during the base period within the meaning of section 722 (b) (2). Petitioner's average net earnings during the base period were more than double its average net earnings during the 18-year period, 1922 to 1939. See *Granite Construction Co., supra,* and cases cited therein. The average net profits during the base period of other members of the industry of which petitioner was a member were approximately 75 per cent of their 1922 to 1939 average. These factors tend to show that during the base period petitioner's average net earnings were inflated, not depressed.

Petitioner contends that the base period cannot be compared to the 1922 to 1939 period as it paid large rentals to Dayton Malleable Iron Company during the 8-year period, 1924 to 1931. This contention is untenable for, even assuming that petitioner's net earnings over the 18-year period were diminished by the full amount of the rentals paid (which has not been shown) and adding the full amount of the rentals, $1,298,333.26, to petitioner's aggregate 18-year net profits, the average base period net income is still greater than the 18-year average, being 109.75 per cent thereof.

Petitioner's next contention is that the elimination of its malleable iron production was a change in the character of its business within the purview of section 722 (b) (4). Until 1927 petitioner produced substantial quantities of both malleable iron and cast steel. Between

1927 and 1929 petitioner's principal customer, W. H. Miner, Inc., converted all of its requirements to cast steel. This eliminated 60 per cent of petitioner's malleable iron production. Malleable iron production became no longer profitable for petitioner and was gradually eliminated. The manufacture of malleable iron products was entirely halted prior to 1936.

In order to qualify for relief under section 722 (b) (4) petitioner must show that its "* * * average base period net income is an inadequate standard of normal earnings because, within the meaning of subsection (b) (4), petitioner 'either during or immediately prior to the base period, * * * changed the character of the business' and as a result thereof its average base period net income 'does not reflect the normal operation' of the business for the entire base period." *Acme Breweries*, 14 T. C. 1034, 1054–1055.

Under section 722 (b) (4) "* * * the term 'change in the character of the business' includes * * * a difference in the products or services furnished * * *." Such a difference may result from the elimination of a product or service previously furnished. Cf. Bulletin on Section 722, *supra*, page 50. For example, if the production of malleable iron had resulted in substantial losses and had been eliminated *during* the base period, it might have been a change within the meaning of subsection (b) (4) as that portion of the base period prior to the change would reflect an inadequate standard of normal earnings. Cf. Bulletin on Section 722, *supra*, page 127. The elimination of malleable iron production by petitioner, however, was not a change within the meaning of subsection (b) (4). Such a change must be substantial and to be substantial must result in a *higher* level of normal earnings. *Wisconsin Farmer Co.*, 14 T. C. 1021. Petitioner seems to take the position that the elimination of malleable iron production depressed petitioner's normal earnings. This alone would seem to defeat petitioner's contention that the change was substantial. Cf. *Granite Construction Co., supra*. Furthermore, even if petitioner had contended that the change resulted in an increased standard of normal earnings, there is no evidence to support such a finding.

In addition, the alleged change in the character of petitioner's business did not take place "during or immediately prior to the base period." The change began in 1927 and was 60 per cent complete by the end of 1929. Although the production of malleable iron products was not totally eliminated until 1935, the actual change took place prior to 1930. Cf. *Monarch Cap Screw & Manufacturing Co.*, 5 T. C. 1220, and *Acme Breweries, supra*. Even if we sustained petitioner's contention that the change resulted from halting malleable iron production in 1935, it still would not have been a change "im-

mediately prior to the base period" within the purview of subsection (b) (4). Petitioner eliminated malleable iron production because it was unprofitable. In such a case (where no other relevant factors are present) a new normal level of earnings is reached almost immediately with the elimination of unprofitable production. Here production of malleable iron was stopped and presumably a new normal level of earnings was reached prior to 1936. The Bulletin on Section 722, *supra*, states at page 43:

If the normal level of earnings attributable to the * * * change was reached some time prior to the base period, so that the entire actual base period net income reflected the full normal level of earnings, such * * * change will not be considered to have occurred immediately prior to the base period for the purposes of section 722 (b) (4) * * *

See also Regs. 112, sec. 35.722-3 (d).

We agree with the Commissioner's interpretation of this phrase, and, therefore, the alleged change did not take place "immediately prior to the base period." Also, and for the same reason (i. e., a new normal level of earnings was reached prior to the base period), petitioner has not shown that, as a result of the alleged change, its average base period net income is an inadequate standard of normal earnings and "does not reflect the normal operation" of the business for the entire base period.

For the reasons stated above petitioner is not entitled to the relief sought under section 722 (b) (4).

There remains for consideration petitioner's contention that it is qualified for relief under section 722 (b) (5). In support thereof petitioner cites no grounds for relief other than a combination of those factors relied upon to support its contentions with respect to sections 722 (b) (2) and (4). Factors relied upon by petitioner to establish eligibility for relief under sections 722 (b) (2) and (4) cannot be considered jointly as a new and different basis for relief under section 722 (b) (5). To do so would violate the statutory prohibition of section 722 (b) (5) that relief granted under that section must "not be inconsistent with the principles underlying the provisions of this subsection, and with the conditions and limitations enumerated therein." *Granite Construction Co., supra; Roy Campbell, Wise & Wright, Inc.*, 15 T. C. 894, 901–902. Therefore, petitioner has not shown that it is qualified for relief under section 722 (b) (5).

Petitioner having failed to establish that it qualifies for relief under section 722 (b) (2), (4), or (5), we need not discuss its reconstruction of base period income under those sections. Suffice it to say, however, that petitioner has presented no reconstruction of its base period net income which can be substantiated either in fact or logic.

It has therefore failed in its proof of the requirement that it establish a fair and just amount representing normal earnings to be used as a constructive average base period net income in the computation of its excess profits tax credit.

Reviewed by the Special Division.

*Decision will be entered for the respondent.*