OPINION. Pice, Judge: The petitioner claims a constructive average base period net income of $24,573 under section 722 (b) (4) of the Internal Eevenue Code of 1939. Even if we assume that (1) petitioner commenced business on July 20, 1936, during its base period, (2) that it changed the character of its business on September 10, 1937, when those who had been financing the business were supplanted and their surveillance ceased, and (3) that it changed the character of its business, its product, and its capacity during the period January 25, 1939, to May 31,1940, by the acquisition of new machines for high precision and other work, we are unable to grant relief under the facts of this case. It is now well established that the existence of the “qualifying factors” does not of itself give rise to relief but is only the initial step. In addition, the change must be substantial and a causal connection must exist between the “qualifying factors” and an increased level of earnings. See M. W. Zack Metal Co., 22 T. C. 349, 352 (1954); Pratt & Letchworth Co., 21 T. C. 999 (1954); Lamport Co., 17 T. C. 1079, 1084 (1951); Farmers Creamery Co. of Fredericksburg, Va., 18 T. C. 241, 254 (1952); Wisconsin, Farmer Co., 14 T. C. 1021 (1950). In the case at bar, a consideration of petitioner’s profit and loss history, as shown in the findings, leaves it in a most vulnerable position with regard to its claims by reason of its commencement of business on July 20, 1936, and its change in management on September 10, 1937. It discloses the following: Fiscal period ended June 30, 1937_ ($1,140) Fiscal year ended June 30,1938- (3,428) Fiscal year ended June 30, 1939_ (8,461) Fiscal year ended June 30, 1940_ 3,462 From this it is apparent that these factors worked no improvement in its earnings. There is no satisfactory showing that if these changes were to make a favorable difference they would not have done so within a comparatively short time. And there is nothing which leads us to believe that the slightly more favorable showing which petitioner attained by the end of its base period bore any relation to these factors, or that its level of earnings at that time would have been any greater had either of these factors been initiated 2 years earlier. See M. W. Zack Metal Co., supra. Somewhat similar considerations are dispositive of petitioner’s claim based on a change to a high precision product and change in its capacity by the acquisition of new machines, including those capable of doing high precision work. As to these contentions, petitioner’s position has additional vulnerability by reason of the fact that a substantial part of the sales which might be said to have arisen from the acquisition of this new equipment was caused by and attributable to war-influenced orders from countries other than the United States. We are convinced from the record here that the success by the end of petitioner’s base period which might appear to have stemmed from petitioner’s acquisition of the new equipment was derived from orders or subcontracts from companies directly engaged in what was patently production brought about by a war economy, and, for the most part, having a war-end use. That there was no comparable demand for petitioner’s products prior thereto goes far to confirm the conclusion that war conditions were primarily responsible for the marked improvement which occurred in petitioner’s business[1] at the end of the base period. It, therefore, appears to us that petitioner cannot rightfully lay claim to an advantage from the change of product or capacity, and that such increased earnings as it did experience were primarily war-induced and not attributable to such change. As with the previously considered factors, we are satisfied that even if petitioner had acquired the precision and other machines 2 years earlier than it did, it would not have had any higher level of earnings at the end of its base period because of such acquisition. Except for the war business, we do not believe that the base period demand for petitioner’s products would have exceeded what it actually experienced. The testimony of Ignatius, petitioner’s president, regarding potential base-period business, aside from that which we conclude was war-induced, lacks conviction, is contradictory, and in part is an admission that prior to the war activity there was no justification for petitioner to acquire precision machinery. In Pabst Air Conditioning Corporation, 14 T. C. 427, 436, 437 (1950), we said: Though opinion evidence has been used in general on this subject, East Texas Motor Freight Lines, 7 T. C. 579, it is apparent that it must have basis in the evidence, 7-Up Fort Worth Co., 8 T. C. 52. Therein, much as in this ease, an interested officer of the petitioner expressed the opinion that if the petitioner had been organized two years earlier the volume of sales would have been a certain figure. We said that the record did not support such opinion and quoted Arden-Rayshine Co., 43 B. T. A. 314, that “the establishment of an ultimate fact requires something more than a mere statement of the conclusion of the fact sought to be proved.” * * * In view of the foregoing and, after a careful consideration of the entire record, we must say as we said in Jackson-Raymond Co., 23 T. C. 826 (1955): Notwithstanding the resourceful and diligent efforts of petitioner’s counsel to combat it, we cannot escape the conviction that petitioner’s business gained the success it did largely because of war conditions, * * *. Compare Crowncraft, Inc., 16 T. C. 690; Fezandie & Sperrle, Inc., 5 T. C. 1185. Petitioner’s claim for relief is therefore denied. Reviewed by the Special Division. Decision will he entered for the respondent. A comparison of petitioner’s sales in the calendar year 1939 or Its fiscal year ended June 30, 1940, with its previous history disclosed some improvement, but even such improved sales reflected1 little or no profit until the impact of the unmistakable war-influenced orders.