WATT & SHAND, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 29007.   Filed June 30, 1958.

*George Craven,* Esq., *James F. Gordy,* Esq., and *Ralph E. Stine,* C. P. A., for the petitioner.
*Maurice S. Bush,* Esq., for the respondent.

#### OPINION.

MURDOCK, *Judge:* The Commissioner notified the petitioner that its applications for relief under section 722 for the calendar years 1941 through 1945 had been denied. The findings of fact of the hearing commissioner of this Court, served upon the parties on February 27, 1958, are adopted as the findings of fact. The issues for decision are whether the petitioner was committed to a course of action prior to January 1, 1940, representing a change in the character of its business within the meaning of section 722 (b) (4) of the Internal Revenue Code of 1939, and if so, to what amount of constructive average base period net income, if any, is the petitioner entitled.

Section 722 (b) (4) provides with respect to a taxpayer such as this petitioner that its excess profits tax computed without the benefit of section 722 shall be considered to be excessive and discriminatory if its average base period net income is an inadequate standard of

normal earnings because the taxpayer, during the base period, changed the character of its business and the average base period net income does not reflect the normal operation for the entire base period of the business. It defines a change in the character of the business to include a difference in the capacity for production or operation. Any change in the capacity for operation of the business consummated during any taxable year ending after December 31, 1939, as a result of a course of action to which the taxpayer was committed prior to January 1, 1940, is deemed to be a change on December 31, 1939, in the character of the business. Cf. *Newburgh Transfer, Inc.*, 17 T. C. 841, 852. The same paragraph also provides that if the business of the taxpayer did not reach, by the end of the base period, the earning level which it would have reached if the taxpayer had made the change in the character of the business 2 years before it did so, it shall be deemed to have made the change at such earlier time.

The argument of the petitioner is that its officers, during the latter part of the base period, decided that an enlargement of its selling space was necessary in order to increase its sales; a leading firm of store designers assisted its officers in studying this problem; it employed an architect in 1939 to prepare plans and specifications for enlargement of the store; it notified a tenant in 1939 to vacate, at the end of its lease on March 31, 1940, property on which a part of the new building was to be erected, and the tenant agreed, prior to January 1, 1940, to vacate; a contract was signed in February 1940 for work in connection with the enlargement of the store; the work was begun on April 1, 1940, and the new areas were completed and open to the public on October 30, 1940; the construction increased the floor space 20.4 per cent and the selling space 25.95 per cent; and these changes represented a change in its capacity for operation within the meaning of section 722 (b) (4). The Commissioner argues on this point that such steps as the petitioner had taken prior to January 1, 1940, relating to the subsequent enlargement of its store during 1940 did not commit it to a course of action which resulted in the actual changes. He points out that it did not have to proceed with or under the plans and specifications ordered from its architect and it could have rented again the space which it ordered its tenant to give up. Regulations 112, section 35.722–3 (d) (5), contain the following provisions with reference to commitment:

Such a commitment may be proved by a contract for the construction, purchase, or other acquisition of facilities resulting in such change, by the expenditure of money in the commencement of the desired change, by the institution of legal action looking toward such change, or by any other change in position unequivocally establishing the intent to make the change and commitment to a course of action leading to such change. * * *

The facts show that the officers had definitely decided prior to January 1, 1940, to make some changes which would add floor space and selling space to the store building. The notice which they gave to a tenant occupying part of the existing premises which they intended to demolish in order to build additional store space was a "legal action looking toward such change." The employment of an architect unequivocally led to "the expenditure of money in the commencement of the desired change." Furthermore, these acts and the decisions which led to them represent a "change in position unequivocally establishing the intent to make the change." The evidence as a whole justifies the conclusion that the petitioner was committed to a course of action prior to January 1, 1940, leading to substantial changes which actually took place beginning early in 1940. Cf. *Studio Theatre, Inc.*, 18 T. C. 548.

Once it appears that the petitioner has changed the character of its business, the next questions are whether the average base period net income does or does not reflect the normal operation for the entire base period of the business, what the earning level would have been at the end of the base period if the change had been made 2 years earlier, and, finally, what would be a fair and just amount to represent constructive average base period net income.

Section 722 (b) (4) provides that a commitment resulting in a change is deemed to be a change on December 31, 1939, and provides for a 2-year "push-back." It would be appropriate to consider, under those provisions, that the changes which occurred in 1940 were completed by December 31, 1937. The statute contemplates computation of theoretical earnings as of the close of the base period and constructive average base period net income determined in the light of that terminal base period earning figure.

The petitioner, proceeding along these lines, claims that its actual earnings for the base period should be increased by 12 per cent to arrive at constructive average base period net income. It recognizes that mathematical accuracy in such computation is not possible and approximations must be made. The opinion evidence on which it relies involves improper use of events occurring after December 31, 1939. The record as a whole does not justify any such optimistic conclusion and, in fact, leaves grave doubt as to whether the base period earnings would have been substantially greater if additional space had been available for the operation of the business during that period.

Additional selling space during the base period might have enabled the petitioner to make additional sales and earnings, but not necessarily. An increase in space brings increased depreciation, upkeep, and other expenses, so that any resulting increase in sales must first offset these deductions and others before increased earnings develop.

The petitioner's sales from 1925 through 1930 ranged from $2,642,000 to $2,839,000 despite the fact that it did not have in any of those years the additional space on which it bases its present claim for relief. Sales did not approach those amounts during the period 1936 through 1940 and for 1941 they were only $2,562,601.40. The implication from those figures is that its sales and earnings during the base period were limited and affected by factors other than insufficient floor space. Cf. *National Grinding Wheel Co.*, 8 T. C. 1278, 1285. No doubt the increased floor space proved to be very useful after the base period, when sales and profits increased tremendously, but they were stimulated by the war during those years and such sales cannot be taken into account in constructing average base period net income. Sec. 722 (a). Statements by the president of the petitioner at stockholders' meetings in 1939, 1940, and 1941 do not indicate that floor space was a limiting factor during the base period years. There is, of course, evidence that officers of the petitioner felt during the latter part of the base period that some additional floor space was desirable and the decisions which led to the 1940 construction were actually made in 1939, but the evidence as a whole leaves substantial doubt that an increase in profits would have resulted if the additional space had been available during the base period.

The evidence does not justify a finding that the average base period net income does not reflect the normal operation of the petitioner's business for the entire base period, that its earning level would have been greater at the end of that period if the changes made in 1940 had been completed on December 31, 1937, or that a fair and just amount to represent constructive average base period net income would exceed the amount of $176,129.81, to which the petitioner is entitled under section 713 (e).

Reviewed by the Special Division.

*Decision will be entered for the respondent.*