COLUMBIA BROADCASTING SYSTEM, INC. OF CALIFORNIA (FORMERLY PACIFIC AGRICULTURAL FOUNDATION, LIMITED), PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 30289. Filed April 10, 1959.

*Norman A. Eisner, Esq.,* and *Haskell Titchell, Esq.,* for the petitioner.
*Aaron S. Resnik, Esq.,* for the respondent.

### OPINION.

MURDOCK, *Judge:* The Commissioner, hereafter referred to as the respondent, has denied the petitioner relief under section 722(b)(4) for the years 1943 and 1945. The parties presented their evidence before a commissioner designated by this Court, and the findings of that commissioner have been served upon the parties in accordance with the Rules of this Court. The petitioner states in its reply brief, "We are satisfied with the Findings and take no exceptions." The respondent argues that findings 15, 16, 17, 20, and 22 are immaterial, finding 26 contains an inconsistency, and findings 38 to 43 are misleading. The Court finds no merit in these contentions. He also

states that findings 6, 28, 29, and 50 should "be augmented to include" his proposed findings 5, 36, 37, 47, 62, 73, 84, 86–89, and 90–103. The respondent's proposed finding 5 is unnecessary in view of finding 7. The findings sufficiently disclose the situations covered by the respondent's proposed findings 36, 37, 47, 62, and 73 and the Court is adequately informed. His proposed findings 84 and 86 to 103 are evidentiary and relate to the construction of average base period net income. The finding of the constructive base period net income is made herein by the Court after considering fully the record bearing thereon.

The findings of the commissioner and all facts stipulated by the parties are hereby adopted as findings of the Court.

The respondent argues in brief, but never pleaded, that he should have judgment without considering the merits because no adequate applications for relief were filed. This contention might have some merit if he had refused to consider the question of relief for either year on which the petitioner relies herein, had given as his reason for denying relief that the applications for relief were inadequate, and had pleaded this in his answer as a basis for a judgment. However, his answer contains no reference to this proposition and his notice denying relief and a statement attached to and made a part thereof, as quoted in finding of fact No. 7 adopted by this Court, clearly show that for both of the years 1943 and 1945 he fully considered as the petitioner's basis for the relief claimed the same contentions on which the petitioner now relies. It is thus clear that the respondent gave full consideration to the question of possible relief for each year based upon the documents which were timely filed and upon the grounds relied on herein and waived any defects in the application and claim, as he could do. *United States* v. *Kales*, 314 U.S. 186, 196–197; *Con-Rod Exchange, Inc.* v. *Henricksen*, 27 F. Supp. 427; *Howbert* v. *Penrose*, 38 F. 2d 577, 580–581; *Industrial Yarn Corporation*, 12 T.C. 589.

The petitioner contends that it comes within that part of section 722(b)(4) which provides, "Any change in the capacity for production or operation of the business consummated during any taxable year ending after December 31, 1939, as a result of a course of action to which the taxpayer was committed prior to January 1, 1940, * * * shall be deemed to be a change on December 31, 1939, in the character of the business."

The record indicates that a change, such as this petitioner made, from a Mutual affiliate for the San Jose area to the CBS affiliate for the San Francisco Bay area would be a change in capacity for production or operation within the meaning of section 722(b)(4). Cf. Regs. 112, sec. 35.722–3(d). A question more difficult to answer on this record is whether the petitioner was committed to such a change within the meaning of (b)(4). It is clear that CBS was not even in-

terested in KQW for its San Francisco Bay affiliate prior to the Havana Conference. Events prior to that Conference were too remote to require discussion.

CBS first began to have some interest in KQW as a possible San Francisco Bay area affiliate when it learned in December 1937 that the 1010 kc. frequency being used by KQW would be taken from the United States and the 740 kc. frequency would be substituted under the proposed treaty. CBS realized that KQW could be a desirable affiliate in that area if KQW could be allotted the 740 frequency, if CBS could acquire all of the stock of the petitioner, if KQW could be permitted to increase its power to 50 kw. and if some other things took place. Some of those conditions never occurred, but agreements of stock purchase and affiliation were entered into between CBS and the petitioner on October 29, 1940, the petitioner became the affiliate of CBS for the San Francisco Bay area on January 1, 1942, and the situation continued through both tax years. The *quaere* remains—did the petitioner become committed to such a change prior to January 1, 1940, within the meaning of section 722(b) (4) ?

Regulations 112, section 35.722–3 at page 146, relating to commitments provides, "Such a commitment may be proved by * * * purchase, or other acquisition of facilities resulting in such change, * * * or by any other change in position unequivocally establishing the intent to make the change and commitment to a course of action leading to such change." The Bureau of Internal Revenue Bulletin on Section 722 at page 58, in discussing commitment cases, states that a legally binding form of commitment is not required but, in the words of the regulations, it should be provided by a change in position unequivocally establishing the intent to make the change and commitment to a course of action leading to such change and the taxpayer should establish that it has made a substantial change of position toward effecting the change in capacity, such as the expenditure of substantial sums of money in the commencement of the desired change.

The petitioner was clearly interested in becoming the San Francisco Bay area affiliate from the moment CBS referred to such a possibility when the proposed treaty terms became known, and it so advised CBS. It discouraged inquiries of other networks regarding affiliation with or acquisition of KQW because of its pending arrangements with CBS. Those two prepared tentative terms for such an agreement in the latter part of 1938. CBS had indicated that the Bruntons would have to own all of the stock of the petitioner before any affiliation could take place. The Bruntons borrowed $28,700 from CBS in August 1938 with which they acquired clear title to all of the stock of the petitioner and they reorganized their automobile corporation in that connection. The petitioner consulted with and followed the sugges-

tions of CBS with respect to all major decisions beginning about in 1938. One of those was the new location for a transmittter on which the petitioner spent approximately $70,000 prior to January 1, 1940. The record justifies the conclusion that the site chosen would not have been chosen and so much money would not have been spent but for the contemplated change in affiliation. A number of things which the petitioner did to improve its position cannot be regarded as clearly evidencing a commitment. However, the fair preponderance of the evidence indicates clearly that the petitioner had the intention to make the change in affiliation and unequivocally committed itself to a course of action leading to such change by changing its position considerably, all prior to January 1, 1940, to carry out that intention, despite the absence during the base period of any contract between it and CBS to affiliate. Cf. *Studio Theatre, Inc.*, 18 T.C. 548; *Robinson Terminal Warehouse Corporation*, 19 T.C. 1185; *Watt & Shand*, 30 T.C. 809.

The respondent argues that this case is controlled by *Fezandie & Sperrle, Inc.*, 5 T.C. 1185, because the record discloses that it would have been impossible for the petitioner to have been the San Francisco Bay affiliate of CBS during the base period. He says, "But for the war, it can well be assumed that petitioner would not have been assigned the desirable wave length it utilized for a temporary period during the war." Not only is this statement not supported by the record, but the evidence shows that the war had little, if anything, to do with the changes upon which the petitioner relies for relief in this case. However, the difficult question of constructing average base period net income for the petitioner under section 722 remains. The petitioner, relying strongly, if not entirely, upon a comparison of what it might have earned during the base period as the San Francisco Bay affiliate of CBS with what station KSFO actually did as the San Francisco affiliate of CBS during the last 3 years of the base period, contends that the constructive average base period net income for present purposes should be $92,407. The Court is satisfied that the earnings of the petitioner by the end of the base period would have been substantial had it become the San Francisco Bay affiliate of CBS on January 1, 1938, but the petitioner is too optimistic in its computation resulting in constructive average base period net income of $92,407. Whatever figure is determined must be an estimate at best, and the Court, after giving careful consideration to the entire record bearing upon this point, concludes that a proper figure to represent constructive average base period net income is $55,000.

Reviewed by the Special Division.

*Decision will be entered under Rule 50.*