GRANITE CONSTRUCTION COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 26043, 30271.   Promulgated November 7, 1952.

*Bayley Kohlmeier, Esq., George H. Koster, Esq.,* and *Herbert F. Baker, C. P. A.* for the petitioner.

*R. E. Maiden, Jr., Esq.,* and *R. B. Sullivan, Esq.,* for the respondent.

**OPINION.**

VAN FOSSAN, *Judge:* Petitioner alleges that its excess profits taxes for the calendar years 1940, 1941, 1942, 1943, and 1944 are excessive and discriminatory and here seeks relief under the provisions of section 722, Internal Revenue Code.[1] Specifically, petitioner invokes subparagraphs (1), (2), (4), and (5) of section 722 (b).[2]

As noted in the findings of fact, petitioner is entitled to compute its excess profits credit by using the average earnings method provided in section 713 of the Code. Its average net income in the base period, 1936 to 1939, inclusive, was $1,752.48. Petitioner asserts on brief that the fair and just amount representing normal earnings to be used as a constructive average base period net income is $33,220, or, in any event, not less than $26,552.48. The excess profits credit taken and allowed petitioner for each of the taxable years was computed under the invested capital method provided in section 714 in the amounts set out above.

---

[1] SEC. 722. GENERAL RELIEF—CONSTRUCTIVE AVERAGE BASE PERIOD NET INCOME.

(a) GENERAL RULE.—In any case in which the taxpayer establishes that the tax computed under this subchapter (without the benefit of this section) results in an excessive and discriminatory tax and establishes what would be a fair and just amount representing normal earnings to be used as a constructive average base period net income for the purposes of an excess profits tax based upon a comparison of normal earnings and earnings during an excess profits tax period, the tax shall be determined by using such constructive average base period net income in lieu of the average base period net income otherwise determined under this subchapter. In determining such constructive average base period net income, no regard shall be had to events or conditions affecting the taxpayer, the industry of which it is a member, or taxpayers generally occurring or existing after December 31, 1939, * * *.

[2] While petitioner's claims for refund filed with the Commissioner and the pleadings herein contain claims based upon section 722 (b) (3), such claims were withdrawn from controversy at the hearing.

For petitioner to prevail in its claim for relief under section 722 (b) (1),[3] it is mandatory for petitioner to show that its normal production, output or operation was interrupted or diminished in the base period because of the occurrence, during or immediately prior thereto, of an event unusual and peculiar in the experience of the business. Petitioner contends that just such an event occurred when it undertook the large construction jobs in new and unfamiliar areas during the period from 1932 to 1935, as a result of which it incurred substantial losses and its credit and capital were impaired to the extent that it was unable during the base period to secure or undertake any contracts for large jobs. We are unable to agree.

Petitioner's alleged inability to undertake the larger jobs during the base period, does not appear to have effected any substantial reduction in its physical volume of business. Moreover, the margin of profit realized upon the work undertaken was essentially the same as would have been realized upon larger projects.

The Code section in question "* * * is concerned primarily with physical rather than economic events or circumstances. * * *" See S. Rept. No. 1631, 77th Cong., 2d sess. Such events include floods, fires, explosions, strikes, etc., but do not include "* * * economic maladjustments * * *." Regulations 112, sec. 35.722-3 (a); S. Rept. No. 1631, *supra;* see, also, *Matheson Co.*, 16 T. C. 478. Petitioner agrees that the event, or chain of events, relied upon does not come within the realm of physical events or circumstances.

Upon the basis of the evidence taken as a whole, we are of the opinion that petitioner has failed to show that it is entitled to the relief sought under section 722 (b) (1). Wherefore, its claims based thereon are denied.

Petitioner's contention that it is qualified for relief under section 722 (b) (2) [4] is predicated on the same grounds as were alleged

---

[3] SEC. 722. GENERAL RELIEF—CONSTRUCTIVE AVERAGE BASE PERIOD NET INCOME.

(b) TAXPAYERS USING AVERAGE EARNINGS METHOD.—The tax computed under this subchapter (without the benefit of this section) shall be considered to be excessive and discriminatory in the case of a taxpayer entitled to use the excess profits credit based on income pursuant to section 713, if its average base period net income is an inadequate standard of normal earnings because—

(1) in one or more taxable years in the base period normal production, output, or operation was interrupted or diminished because of the occurrence, either immediately prior to, or during the base period, of events unusual and peculiar in the experience of such taxpayer,

* * * * * * *

[4] SEC. 722. GENERAL RELIEF—CONSTRUCTIVE AVERAGE BASE PERIOD NET INCOME.

(b) TAXPAYERS USING AVERAGE EARNINGS METHOD.—

* * * * * * *

(2) the business of the taxpayer was depressed in the base period because of temporary economic circumstances unusual in the case of such taxpayer or because of the fact that an industry of which such taxpayer was a member was depressed by reason of temporary economic events unusual in the case of such industry,

* * * * * * *

above. That is to say, petitioner's claim is that its capital and credit were temporarily so impaired, as a result of the substantial losses sustained on the large jobs undertaken by it from 1932 to 1935 in new and unfamiliar areas, that it was prevented from securing contracts for any large jobs in the base period. It is respondent's position that petitioner's business was not "* * * depressed in the base period because of temporary economic circumstances * * *" within the purview of the statute invoked.

We feel respondent's position to be well taken. The alleged temporary and unusual economic depression of petitioner's business, that is here relied upon, was, in fact, self-imposed. Such depression was, in substance, primarily brought on by the managerial decision, internally determined, to undertake large construction jobs outside of petitioner's normal sphere of operations.

In the Bulletin on Section 722 of the Internal Revenue Code, Part III, at page 16, issued by the Commissioner on November 2, 1944, the scope and intendment of section 722 (b) (2) and of the term "economic circumstances" used therein is explained as follows:

The term "economic" includes any event or circumstance, general in its impact or externally caused with respect to a particular taxpayer, which has repercussions on the costs, expenses, selling prices, or volume of sales of either an individual taxpayer or an industry. Thus, not every event or circumstance which has an adverse effect on a taxpayer's profits may serve to qualify that taxpayer for relief under subsection (b) (2). First, the temporary and unusual character of the circumstance or event must be clearly established. Second, the cause of the temporary depression must be shown to be external to the taxpayer, in the sense that it was not brought about primarily by a managerial decision. A taxpayer cannot qualify for relief under subsection (b) (2) because its earnings were temporarily reduced in the base period in consequence of its own business policies, internally determined. * * *

The foregoing provision which has heretofore been approved by this Court in *Foskett & Bishop Co.*, 16 T. C. 456, and *Toledo Stove & Range Co.*, 16 T. C. 1125, is applicable to the instant case, and alone would appear to dispose of petitioner's claims under section 722 (b) (2). The statute was not designed to counteract errors of business judgment or to underwrite unwise business policies.

There exists, however, further reason for denial of the relief so sought. It is to be noted that petitioner's average net profits was actually greater in the base period than in the 18-year period, 1922 to 1939. In *Foskett & Bishop Co.*, *supra*, where somewhat similar circumstances were involved, we said, in part:

* * * An examination of petitioner's earnings from 1922 through 1939, shows that for these years petitioner suffered an average net loss of $4,713.76, while for the base period years 1936 through 1939, petitioner showed an average profit of $704.45. It, therefore, seems that petitioner has not established its right to relief under section 722 (b) (2), for it would be ignoring the facts to

find that petitioner's business was *depressed* in the base period as compared to its earnings for the average long term period 1922 to 1939. *Winter Paper Stock Co.*, 14 T. C. 1312. Cf. *Monarch Cap Screw & Manufacturing Co.*, 5 T. C. 1220.

See, also, *Industrial Yarn Corporation*, 16 T. C. 681; *Avey Drilling Machine Co.*, 16 T. C. 1281.

We, therefore, hold that petitioner has not shown its business to have been depressed in the base period within the meaning of section 722 (b) (2).

Petitioner next claims relief under section 722 (b) (4).[5] The substance of petitioner's claim is that prior to 1931 it had followed the policy of confining its business operations to the central coastal counties of California, an area with which its officers and employees were thoroughly acquainted. In 1931 the then owners of the majority stock control caused petitioner to abandon its former policy and go outside its normal area of operations to secure contracts. This expansion into new and unfamiliar areas resulted in substantial losses. Wilkinson and Scott, who had owned but one-third of petitioner's stock, acquired the remaining two-thirds thereof in 1936. Upon acquisition of control, these two men caused petitioner to revert to the policy of restricting its operations to the local area. Petitioner contends that the foregoing change in management and control constitutes a change in the character of its business from which an increase in profits directly resulted, and that its finances, personnel, and equipment were so affected by the disastrous policies of the preceding 5 years it was unable to reach full-scale, normal operations until the last year of the base period.

Respondent has taken the position that petitioner did not change the character of its business during or immediately prior to the base period so as to qualify for relief under the statute relied upon.

To be entitled to relief under section 722 (b) (4) as having changed the character of its business by a change in management, petitioner must show, first, that there was a change in its key-management of personnel or a change in its basic policy of operations by the existing management, and, second, that as a direct result thereof there were

---

[5] SEC. 722. GENERAL RELIEF—CONSTRUCTIVE AVERAGE BASE PERIOD NET INCOME.

(b) TAXPAYERS USING AVERAGE EARNINGS METHOD.—

 *   *   *   *   *   *   *

(4) the taxpayer, either during or immediately prior to the base period, commenced business or changed the character of the business and the average base period net income does not reflect the normal operation for the entire base period of the business. If the business of the taxpayer did not reach, by the end of the base period, the earning level which it would have reached if the taxpayer had commenced business or made the change in the character of the business two years before it did so, it shall be deemed to have commenced the business or made the change at such earlier time. For the purposes of this subparagraph, the term "change in the character of the business" includes a change in the operation or management of the business,  *   *   *

increased earnings. "* * * The mere fact that earnings for a period after the change are greater * * * than earnings for a period prior to the change is not conclusive as to whether or not there were increased earnings directly attributable to the change. * * *." See the Bulletin on Section 722 of the Internal Revenue Code, *supra*, wherein also appears the following, at p. 45:

> The type of qualifying change contemplated by the statute and the regulations is one which produces a marked, basic and lasting difference in the nature of the operations of the business and which results directly in a substantially higher level of normal earnings. Accordingly, routine changes customarily made by businesses, changes temporary in character or changes which have no effect on the normal range of profits may not be considered to have produced a change in the character of the business within the intent and meaning of section 722 (b) (4).

The foregoing appears consistent with Regulations 112, section 35.722–3 (d), in which it is stated:

### [Change in Character of Business]

> A change in the character of the business for the purposes of section 722 (b) (4) must be substantial in that the nature of the operations of the business affected by the change is regarded as being essentially different after the change from the nature of such operations prior to the change. No change which businesses in general are accustomed to make in the course of usual or routine operations shall be considered a change in the character of the business for the purposes of section 722 (b) (4). Trade custom and practice may be taken into account in determining whether an essential difference in the character of the business has occurred. A change in the character of the business, to be considered substantial, must be reflected in an increased level of earnings which is directly attributable to such change. * * *
>
> * * * * * * *
>
> ### [Change in Operation or Management]
>
> (1) A change in the operation or management of the business. The introduction of new or substantially different processes of manufacturing or of new or substantially different methods of distribution would constitute a change in the operation of a business; the hiring of new key managing personnel or the adoption of materially new basic management policies by the old management resulting in drastic changes from old policies would constitute a change in the operation or management of the business. However, ordinary technological improvements developed in the course of routine business operations or changes in operating or supervisory personnel normally experienced by business in general and having no effect upon basic business policies would not be considered a change in the operation or management of the business.

We believe the above quoted excerpts, outlining general principles, are definitive of what constitutes a change of character of business through a change in operation or management as contemplated by the statute. See *Wisconsin Farmer Co.*, 14 T. C. 1021.

In the instant proceeding petitioner has argued in support of its claims under section 722 (b) (1) that the undertaking of contracts

outside of its normal field of operations was a temporary practice unusual and peculiar in its experience. On the other hand, in support of its section 722 (b) (4) claims, petitioner, in substance, now contends that its reversion from such abnormal policy to its normal policy of restricting operations to the local area, represents a substantial and permanent change in the character of its business, which change resulted in an increase in earnings. The inconsistency in petitioner's position is obvious. As a whole, the record made is entirely unconvincing, and in the aggregate fails to prove that there was a substantial and permanent change in the character of petitioner's business "immediately prior" to the base period years to which may be solely attributed the increase in profits realized in those years. For aught the evidence shows, portions of increased profits may very well have been, and in fact, probably were, due to other factors entirely unrelated to the shift in management control and the so called change in operating policy.

In our opinion, petitioner has not shown itself to be entitled to the relief sought under section 722 (b) (4), and we so hold.

There remains petitioner's contention that it is qualified for relief under section 722 (b) (5).[6] Such contention lacks merit inasmuch as it is based upon a combination of the factors heretofore separately considered and rejected as offering grounds for relief under section 722 (b) (1), (2), and (4). To grant the relief which petitioner here seeks, would manifestly violate the statutory prohibition that relief granted under section 722 (b) (5) be not "*   *   * inconsistent with the principles underlying the provisions of this subsection, and with the conditions and limitations enumerated therein." *General Metalware Co.*, 17 T. C. 286; *Foskett & Bishop Co., supra; Roy Campbell, Wise & Wright, Inc.*, 15 T. C. 894; *George Kemp Real Estate Co.*, 12 T. C. 943. Petitioner appears to agree with the above conclusion since it apparently abandoned the issue in its reply brief.

Therefore, respondent did not err in his disallowance of petitioner's claims for relief under the provisions of section 722 (b) (5).

Petitioner has failed to demonstrate that it qualifies for relief under section 722 (b) (1), (2), (4) or (5). Consequently, we need not discuss its reconstruction of base period income under those sections. Suffice it to say that petitioner has not shown that the amount advo-

---

[6] SEC. 722. GENERAL RELIEF—CONSTRUCTIVE AVERAGE BASE PERIOD NET INCOME.

(b) TAXPAYERS USING AVERAGE EARNINGS METHOD.—

*       *       *       *       *       *.

(5) of any other factor affecting the taxpayer's business which may reasonably be considered as resulting in an inadequate standard of normal earnings during the base period and the application of this section to the taxpayer would not be inconsistent with the principles underlying the provisions of this subsection, and with the conditions and limitations enumerated therein.

cated as a fair and just amount representing normal earnings would result in a greater excess profits credit than that allowed and computed under the invested capital method. See *D. L. Auld Co.*, 17 T. C. 1199.

Reviewed by the Special Division.

*Decisions will be entered for the respondent.*