## KENTUCKY WHIP & COLLAR COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 24419.   Promulgated January 27, 1953.

*Reber Boult, Esq.*, and *T. M. McIntyre, C. P. A.*, for the petitioner.
*Robert M. Willan, Esq.*, and *Joseph L. Spilman, Jr., Esq.*, for the respondent.

OPINION.

BLACK, *Judge:* Petitioner's average base period net income for its four base period years, 1936, 1937, 1938, and 1939 was a minus quantity. It had net income in only one of the base period years, namely, 1936 and its net income for that year was only $6,812.84. It had losses for the other three base period years and when all four of the years are averaged up, petitioner had an average loss of $16,796.48 during the base period years. Such being the case, it is to petitioner's advantage to use an excess profits credit based on invested capital. Those credits were $11,165.33 for the fiscal year 1943, $11,419.31 for the fiscal

year 1944, and $10,272.18 for the fiscal year 1945. These credits have been used in a computation of petitioner's excess profits liability for the respective fiscal years named and there is no dispute about them.

Petitioner contends, however, that it is entitled to a constructive average base period net income, hereafter referred to as CABPNI, under section 722 of the Code which will yield it a larger excess profits credit than has been granted it, based on its invested capital. In making such a claim petitioner states three issues as having been raised by the pleadings, as follows:

(1) Was a "smear campaign" conducted against Petitioner by its competitors after the passage of the Hawes-Cooper Act and the Ashurst-Summers Act which adversely affected Petitioner's business and profits so as to qualify Petitioner for relief under Section 722 (b) (1) or (b) (2), above quoted?

(2) Was there a change in the character of the business of Petitioner represented by a change in management, fiscal and operational policies on or about September 1, 1939 which would qualify Petitioner for relief for the preceding two years pursuant to Section 722 (b) (4), above quoted?

(3) Has the Petitioner established a basis for finding a fair and just amount of normal earnings sufficient to warrant an excess profits credit in excess of the credit allowable under the invested capital method for each of the years under review?

Petitioner contends that the facts proved at the hearing require an affirmative answer to all three of the foregoing questions and based upon that assumption petitioner argues that it has also sufficiently proved that it is entitled to a CABPNI of $27,423.77. Petitioner contends that in each of the taxable years its excess profits credit should be based on this $27,423.77 CABPNI, instead of the credits which have been used based on invested capital.

The first thing which we have to decide is whether petitioner has proved its ground for relief as provided in section 722. If it has not done so, then it follows as a matter of course that there is no basis for arriving at a CABPNI. After a careful consideration of all the evidence in the record we have concluded that petitioner has not proved either of the grounds upon which it relies for relief in its applications and its petition and we have made findings to that effect in our Findings of Fact.

*Ground 1, Smear Campaign Conducted by Petitioner's Competitors.*

As pointed out above, petitioner in raising this ground for relief relies upon section 722 (b) (1) or (b) (2). These provisions of the Code are printed in the margin.[1]

---

[1] SEC. 722. GENERAL RELIEF—CONSTRUCTIVE AVERAGE BASE PERIOD NET INCOME.

\* \* \* \* \* \* \*

(b) TAXPAYERS USING AVERAGE EARNINGS METHOD.—The tax computed under this subchapter (without the benefit of this section)ₗ shall be considered to be excessive and discriminatory in the case of a taxpayer entitled to use the excess profits credit based on

We will first take up petitioner's contention that it has established ground for relief under 722 (b) (2) as that seems to be the ground most relied upon by petitioner. The essential elements of this sub-section, as we understand them, are: (1) the business of the taxpayer (or the business of the industry of which it was a member) must be depressed, (2) the depression of business must be caused by temporary economic circumstances, and (3) such circumstances must be "unusual in the case of the taxpayer," or of the industry.

After a careful reading of petitioner's brief we understand it to concede that the industry of which it was a member, the horse collar and harness industry, was depressed by causes which were permanent, namely, the declining use of horses and mules on the farm. But petitioner contends that its own particular business was depressed during the base period years not so much because of the declining industry of which it was a part, but because of the smear campaign or sales tactics conducted by its competitors during the base period years which petitioner alleges was temporary. We are not convinced by the evidence that petitioner's position is sound. We think the real effective cause of petitioner's declining sales during the base period was due to the enactment by Congress of the Hawes-Cooper Act and the Ashurst-Summers Act plus the fact that petitioner was a member of a declining industry, and these causes were not temporary. An example given in Regulations 112, section 35.722-3 (b) seems to us analogous:

An economic circumstance is temporary depending upon the character and nature of such circumstances rather than upon the mere length of time of its existence. Thus, the income of a declining business or industry which was depressed throughout the base period because of economic conditions of a chronic and continuing character which may be expected to depress the earnings of such business for an indefinite period is not an inadequate standard of normal earnings under section 722 (b) (2). For example, a traction company the earnings of which had been steadily reduced over a decade by increasing competition with motor trucks and by the use of private passenger vehicles might not be considered to suffer business depression by reason of temporary and unusual economic circumstances. Higher income resulting from increased patronage due to wartime restrictions upon the use of alternative methods of transportation should reasonably be regarded as excess profits. Low earnings are entirely normal in the case of such a chronically depressed taxpayer and

income pursuant to section 713, if its average base period net income is an inadequate standard of normal earnings because—
    (1) in one or more taxable years in the base period normal production, output, or operation was interrupted or diminished because of the occurrence, either immediately prior to, or during the base period, of events unusual and peculiar in the experience of such taxpayer,
    (2) the business of the taxpayer was depressed in the base period because of temporary economic circumstances unusual in the case of such taxpayer or because of the fact that an industry of which such taxpayer was a member was depressed by reason of temporary economic events unusual in the case of such industry,

are not rendered subnormal merely because an increased level of profits resulting from the effect of war conditions occurs during excess profits tax taxable years.

Cf. *Toledo Stove & Range Co.*, 16 T. C. 1125, in which we said, among other things, as follows:

At the risk of unnecessarily extending the discussion of petitioner's claim under section 722 (b) (2), even if petitioner were held to have shown that its business was *depressed* within the meaning of the statute, it still would be incumbent on petitioner to show that the depression was caused by *"temporary economic* circumstances" in its own case or such *events* in the case of its industry. * * *

We then went on to hold that the taxpayer in the *Toledo Stove & Range Co.* case had not made such a showing. We make the same sort of holding here.

Petitioner in support of its contention that it has qualified itself for relief under 722 (b) (2) strongly relies on *Dyer Engineers, Inc.*, 10 T. C. 1265. We think that case is distinguishable on its facts and is not controlling here.

As we have already said petitioner not only relies upon section 722 (b) (2) but it relies upon section 722 (b) (1) for relief. What we have said in denying petitioner's claim for relief under section 722 (b) (2), we think is largely applicable to petitioner's claim for relief under section 722 (b) (1). Under the facts which have been set out in our Findings of Fact, we do not think petitioner has proved right to relief under section 722 (b) (1). We so hold.

## *722 (b) (4) Ground.*

Did the reduction in the size of the management staff of petitioner by one individual following the retirement of petitioner's president in September 1939 constitute a change in management within the meaning of subsection (b) (4)? A taxpayer's average base period net income may be deemed to be an inadequate standard of normal earnings under subsection (b) (4) if:

(4) the taxpayer, either during or immediately prior to the base period, commenced business or changed the character of the business and the average base period net income does not reflect the normal operation for the entire base period of the business. * * * For the purposes of this subparagraph, the term "change in the character of the business" includes a change in the operation or management of the business, * * *

The applicable regulations to the part of the statute which we have just quoted are printed in the margin.[2]

---

[a] Regulations 112, section 35.722-3 (d) provides in part as follows:

A change in the character of the business for the purposes of section 722 (b) (4) must be substantial in that the nature of the operations of the business affected by the change is regarded as being essentially different after the change from the nature of such operations prior to the change. No change which businesses in general are accustomed to make in

The basis of petitioner's claim under subsection (b) (4) was set forth as follows in its applications for relief:

Taxpayer also claims that there was a change in character of business during the base period as defined in Section 722 (b) (4). The specific change in character of the business upon which taxpayer relies is that portion of Section 722 (b) (4) which relates to "change in the operations or management of the business."

Taxpayer corporation during that portion of the base period prior to September 1, 1939 was owned ⅝ths by R. S. Mason and ⅜ths by A. P. Day. R. S. Mason was president and general manager of the taxpayer corporation, and being the majority stockholder, controlled all corporation activities, including its sales policies, financial management, etc. in much the same manner as if it were his own individual business. As the taxpayer's comparative balance sheets will show, the company on September 1, 1939 was in a serious financial condition. It was on that date that A. P. Day, the owner of ⅜ths of the capital stock, purchased the ⅝ths interest of R. S. Mason, who then terminated his connection with the company. Upon acquiring the entire capital stock of the corporation, A. P. Day assumed all of the duties formerly delegated to R. S. Mason without an increase in his own salary or employing anyone to perform the duties previously handled by R. S. Mason.

It is contended by the taxpayer that had this change in management of the corporation occurred two years prior to September 1, 1939 the corporation would have saved the amount of salary paid to R. S. Mason during the two year period ended on that date. * * *

We do not think the change upon which petitioner relies qualifies under 722 (b) (4) as a change in the "operation and management of the business." We call particular attention to that part of Regulations 112, section 35.722–3 (d) which says:

* * * the hiring of new key managing personnel or the adoption of materially new basic management policies by the old management resulting in drastic changes from old policies would constitute a change in the operation or management of the business. However, * * * changes in operating or supervisory personnel normally experienced by business in general and having no effect upon basic business policies would not be considered a change in the operation or management of the business.

We hold against petitioner as to this particular alleged ground for relief in the change of the character and operation of its business. Doubtless it is true that in October 1936, when petitioner acquired a new building and moved out of the penitentiary and ceased to use convict labor and began the use of free labor, a change in the character

the course of usual or routine operations shall be considered a change in the character of the business for the purposes of section 722 (b) (4). * * *

A change in the character of the business includes changes resulting from the following activities:

(1) A change in the operation or management of the business, * * * the hiring of new key managing personnel or the adoption of materially new basic management policies by the old management resulting in drastic changes from old policies would constitute a change in the operation or management of the business. However, * * * changes in operating or supervisory personnel normally experienced by business in general and having no effect upon basic business policies would not be considered a change in the operation or management of the business.

of its business occurred which would have qualified petitioner for relief under 722 (b) (4), but it is not every qualifying change which affords relief under 722. The taxpayer must show by adequate evidence that a CABPNI results from such change which will yield a larger excess profits credit than the taxpayer has been granted under the other provisions of the statute. Petitioner in this case has made no such showing. As a matter of fact, petitioner did not rely upon this particular change in its applications for relief, in its petition, nor does it do so in its brief. Therefore, such change from convict labor to free labor is without any significance in this proceeding.

In our Findings of Fact we have omitted any reference to the figures which were embodied in the CABPNI which petitioner alleged it was entitled to use in lieu of the excess profits credit that petitioner has been granted under the invested capital method. The reason we have omitted these figures from our Findings of Fact is because until a taxpayer has qualified itself for relief under section 722 such figures are irrelevant; they serve no useful purpose.

Reviewed by the Special Division.

*Decision will be entered for the respondent.*