THE CONSTITUTION PUBLISHING COMPANY, BY ATLANTA NEWSPAPERS, INC., SUCCESSOR ON CONSOLIDATION, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 37709.    Filed October 8, 1954.

*John E. McClure, Esq., Allen Post, Esq., Edward L. Updike, Esq.,* and *William P. McClure, Esq.,* for the petitioner.

*George J. LeBlanc, Esq.,* for the respondent.

22

24

## OPINION.

ARUNDELL, *Judge:* The petitioner applied to the respondent for relief from its excess profits taxes for the calendar years 1940, 1942, and 1943, and in its application and claims for refund in the total amount of $278,578.16, it urged that grounds for relief were present under subsections (b) (2), (4), and (5) of section 722 of the Internal Revenue Code of 1939. The respondent rejected the claims and denied the relief sought, and the case is now before the Tax Court for a review of respondent's action. In its petition filed with this Court, the petitioner relies on the same broad facts and the same subsections of the statute as it had when pursuing its claims before the respondent.

The design of the excess profits tax statute is to treat the earnings during the so-called base period of 1936 to 1939, inclusive, as normal earnings and a credit equal to 95 per cent of these average earnings is first deducted before subjecting the profits of the war years to the

excess profits tax. Congress recognized that in some instances the actual base period income was not a fair and just measure of a corporation's normal earnings to be used in fixing the credit to be applied in excess profits tax cases and to that end enacted a series of provisions for making adjustments under specified circumstances. In section 722 of the Internal Revenue Code of 1939 it permitted a taxpayer who felt aggrieved to apply to the Commissioner of Internal Revenue for relief. The relief which is provided by this section, whether granted by the respondent or by this Court, is not based on broad, equitable principles, but can be granted only if certain conditions exist. *Alexandria Amusement Corporation*, 16 T. C. 446. Section 722 spells out in considerable detail the factors and circumstances necessary for a corporation to make itself eligible for the relief sought.

Petitioner had been publishing for many years a daily and Sunday newspaper in general circulation in the city of Atlanta, Georgia, in competition with two other newspapers of a general circulation published in the afternoon and on Sunday. It is petitioner's contention that the field could only reasonably support two newspapers and that with a third one in the field the competition was intense, particularly in the matter of securing advertising and circulation, with the result that its business became depressed and remained so until one of the newspapers, the Georgian, suspended publication in the latter part of 1939. Petitioner urges that the large increase in its earnings in the tax years resulted from the elimination of the Georgian as a competitor and that the added profits sought to be subjected to the excess profits tax did not result from the impact of the war economy, but from this lessened competition.

The problem we have is not made simpler by a recognition of the fact that the circulation of a newspaper depends on many factors, such as the nature of its news coverage, its editorial slant, the nature of its sports and financial pages, or even its comic section. It is not selling goods of a standard brand where a price tag is the main consideration of the purchaser, but a variety of reasons enter into the selection of the paper one subscribes for, or, indeed, the paper one advertises in.

It is petitioner's first contention that it is entitled to relief under section 722 (b) (2).[1] As we have said previously, "The essential ele-

---

[1] SEC. 722. GENERAL RELIEF—CONSTRUCTIVE AVERAGE BASE PERIOD NET INCOME.

(b) TAXPAYERS USING AVERAGE EARNINGS METHOD.—The tax computed under this subchapter (without the benefit of this section) shall be considered to be excessive and discriminatory in the case of a taxpayer entitled to use the excess profits credit based on income pursuant to section 713, if its average base period net income is an inadequate standard of normal earnings because—

* * * * * * *

(2) the business of the taxpayer was depressed in the base period because of temporary economic circumstances unusual in the case of such taxpayer or because of the fact that an industry of which such taxpayer was a member was depressed by reason of temporary economic events unusual in the case of such industry.

ments of this subsection * * * are: (1) the business of taxpayer * * * must be depressed, (2) the depression of business must be caused by temporary economic circumstances, and (3) such circumstances must be 'unusual in the case of the taxpayer.'" *Kentucky Whip & Collar Co.*, 19 T. C. 743, 749.

We think the facts as we have found them disclose that during the base period years, petitioner's advertising revenue and income from circulation were gradually growing year-by-year and that its business was better in the base period than prior to the base period. Petitioner's average annual net advertising revenue during the base period exceeded the average annual income from this source during the period 1933 through 1935, and its average annual yield per line of advertising in the base period exceeded the average annual yield per line of advertising during the 1933–1935 period. Petitioner's average annual circulation, circulation revenue, and yield per unit of circulation were greater in the base period than for the years 1933 through 1935. Also, petitioner's average annual net income from the publication of the Constitution in the base period of $51,460 was substantially greater than the average annual net income of $37,184 realized from the newspaper during the 10-year period from 1926 through 1935.

On the basis of our findings, we cannot conclude that the petitioner's business was depressed during the base period. The business of the petitioner was growing, up to and through the base period, despite the concurrent existence of the very competition to which the petitioner points as the cause of the alleged base period depression. When all the facts have been analyzed, they show that the petitioner realized a substantial increase in its average annual net income in the base period over the average income in its prior history, despite the fact that during the base period the petitioner was encountering substantial increases in operating costs. It is quite obvious, for example, that there was an abrupt increase in the cost of petitioner's newsprint during the base period. There were also steady increases in the wages and salaries of operating personnel during the base period. We think that it was these and other increases in operating expenses which cut most into petitioner's earnings during the base period and that the comparatively smaller increases in rebates, allowances, and discounts, which may have been brought on by competition, did not significantly affect the petitioner's profits between 1936 and the end of 1939.

However, assuming that the foregoing summary establishes the contrary conclusion that the petitioner's business was depressed during the base period, the petitioner has failed to satisfy the remaining elements which must be proved to qualify for relief under section 722 (b) (2). That is to say, the petitioner has failed to show that its business was depressed because of temporary economic circumstances unusual in its case. In this context, "temporary" is a relative term.

We have quoted with approval the respondent's Regulations 112, section 35.722–3 (b), where it is said that "An economic circumstance is temporary depending upon the character and nature of such circumstances rather than upon the mere length of time of its existence." *Kentucky Whip & Collar Co., supra.*

The petitioner contends that the competition it received from the Georgian was temporary because no third newspaper could expect long to survive in Atlanta and unusual because the Hearst interests were callous to the substantial losses experienced by the Georgian. However, we have said, "Competition is present in almost any business. Instead of it being something unusual, it is quite common. It is of the very essence of our capitalistic system." *Lamar Creamery Co.,* 8 T. C. 928, 939. We think that this is particularly true of the newspaper publishing business.

Nor do we think that a competitive situation which existed at least 10 years before the base period can be considered temporary, particularly where the petitioner has indicated its ability to live with the competition it complains of and even increase its average annual net profits over the years. Cf. *Winter Paper Stock Co.,* 14 T. C. 1312, 1320; *Packer Publishing Co.,* 17 T. C. 882, 897, remanded for other reasons (C. A. 8, 1954) 211 F. 2d 612.

Nor do we think that the petitioner qualifies for relief under section 722 (b) (4).[2] There was no substantial change in the character of petitioner's business during the base period. Only the volume of business and, perhaps, the profit ratio were affected by the removal

---

[2] SEC. 722.—GENERAL RELIEF—CONSTRUCTIVE AVERAGE BASE PERIOD NET INCOME.

(b) TAXPAYERS USING AVERAGE EARNINGS METHOD.—The tax computed under this subchapter (without the benefit of this section) shall be considered to be excessive and discriminatory in the case of a taxpayer entitled to use the excess profits credit based on income pursuant to section 713, if its average base period net income is an inadequate standard of normal earnings because

\*       \*       \*       \*       \*       \*

(4) the taxpayer, either during or immediately prior to the base period, commenced business or changed the character of the business and the average base period net income does not reflect the normal operation for the entire base period of the business. If the business of the taxpayer did not reach, by the end of the base period, the earning level which it would have reached if the taxpayer had commenced business or made the change in the character of the business two years before it did so, it shall be deemed to have commenced the business or made the change at such earlier time. For the purpose of this subparagraph, the term "change in the character of the business" includes a change in the operation or management of the business, a difference in the products or services furnished, a difference in the capacity for production or operation, a difference in the ratio of non-borrowed capital to total capital, and the acquisition before January 1, 1940, of all or part of the assets of a competitor, with the result that the competition of such competitor was eliminated or diminished. Any change in the capacity for production or operation of the business consummated during any taxable year ending after December 31, 1939, as a result of a course of action to which the taxpayer was committed prior to January 1, 1940, or any acquisition before May 31, 1941, from a competitor engaged in the dissemination of information through the public press, of substantially all the assets of such competitor employed in such business with the result that competition between the taxpayer and the competitor existing before January 1, 1940, was eliminated, shall be deemed to be a change on December 31, 1939, in the character of the business, \* \* \*

of the competition. While petitioner did acquire some of the Georgian's assets and hire some of its employees, it is not shown that these were changes which substantially increased its capacity for production or affected the character of its business. See *Stonhard Co.*, 13 T. C. 790; *Wisconsin Farmer Co.*, 14 T. C. 1021. There was no evidence that petitioner ever suffered from any lack of capacity or facilities for carrying on its business.

Petitioner argues that the change in the character of its business came about by its acquisition of assets of a competitor, with the result that competition between it and the competitor was eliminated. This position is untenable. It was not petitioner's acquisition of assets formerly owned by the Georgian or the hiring of a few of its former employees that resulted in the elimination of the Georgian from competition. It was the purchase of the Georgian and the Journal by the James M. Cox interests.

Unquestionably, there was a substantial change in petitioner's general economic situation which was brought about by the discontinuance of the Georgian; but that was not such a change as subsection (b) (4) was intended to cover. The plain requirement of the statute is that the improved condition must result "because the taxpayer * * * changed the character of the business * * *." This change in the economic picture was not a change resulting from any undertaking of the petitioner. Petitioner had no part in the purchase of the Georgian or the cessation of its publication. See *Clermont Groves, Inc.*, 17 T. C. 1616.

Petitioner's claim for relief under subsection (b) (5) of section 722 is bottomed on two grounds. The first is that its earnings were depressed by reason of the so-called unfair competition of the Georgian during the base period, a point we have already considered and disposed of when advanced in support of relief under subsection (b) (2).

The second ground urged by petitioner is "that the discontinuance of the Georgian in December 1939, was a factor affecting its business which resulted in increased earnings, the effect of which was not adequately reflected in its average base period net income." There is no doubt that when the competition of the Georgian was removed and petitioner captured some of the former advertising and circulation, there was a resulting increase in petitioner's level of earnings but, in our opinion, this fortunate happening is not an event which also brings petitioner within the relief provisions of section 722. This latter argument is one which we also considered in disposing of petitioner's claim for relief under subsection (b) (4).

Having heretofore concluded that these factors, when considered in connection with claims for relief under subsections (b) (2) and (b) (4), were not in the circumstances here present sufficient to war-

rant relief, it would seem to us to be clearly inconsistent if these same factors were now sufficient to qualify for relief under subsection (b) (5). We again call attention to the express statutory provision in subsection (b) (5) providing that the application of this section must not be inconsistent with the principles underlying the provisions of this subsection and with the conditions and limitations enumerated therein. *Clermont Groves, Inc., supra; George Kemp Real Estate Co.*, 12 T. C. 943; *Granite Construction Co.*, 19 T. C. 163.

In our opinion the statute does not afford relief in circumstances such as existed in this case.

Reviewed by the Special Division.

*Decision will be entered for the respondent.*