WILLIAM W. STANLEY CO., INC., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 26453. Filed April 18, 1955.

24

*Sidney Meyers, Esq.*, for the petitioner.
*John A. Clark, Esq.*, for the respondent.

OPINION.

ARUNDELL, *Judge:* Petitioner seeks to recover the excess profits taxes paid for the years 1940–1945, inclusive, in the aggregate amount of $245,939.92. It contends that there was a change in the character of its business during the base period, within the meaning of section 722 (b) (4), and that by reason of such change the average base period net income does not reflect the normal operations of the entire base period. The change is said to have resulted when, in addition to its regular business of manufacturing standard canvas products, petitioner began the manufacture and sale of hospital supplies and of so-called technical products for industrial use.

We have found on the evidence before us that the manufacture and sale of the hospital supplies was begun by the petitioner in 1936 and that petitioner set up a separate department for that branch of its business. We have not made such a finding with respect to the so-called technical products. The evidence is that these, or similar products, had been manufactured by the petitioner for a number of years prior to the base period but that the demand for them increased during and after the base period years. Improvements were made in materials and designs to keep abreast of newly developed materials and techniques during the base period but there were no dominant changes in the methods of manufacturing or in the commodities produced.

There was no separation in petitioner's records of the production costs or sales of the technical products. The records of all products other than hospital supplies were lumped together and carried under the heading "other products." For the purpose of this trial, a schedule was prepared of the sales of technical products from invoices and other records which showed the sales amounting to $31,707 in 1936; $37,339 in 1937; $43,152 in 1938; and $46,868 in 1939, out of total sales of "other products" amounting to $121,027.50 in 1936; $130,187.15 in 1937; $94,307.03 in 1938; and $126,271.79 in 1939. In this schedule an article was classified as technical or nontechnical on purely arbitrary bases, depending upon its use and the opinion of those who prepared the schedule.

On the evidence of record, we cannot find that there was any change in the character of petitioner's business with respect to the technical products nor are we able to determine how much of petitioner's earnings may have been attributable to the manufacture and sale of them. See *Avey Drilling Machine Co.*, 16 T. C. 1281; *A B C Brewing Corporation*, 20 T. C. 515; *West Flagler Amusement Co.*, 21 T. C. 486.

We will assume that the establishment of the hospital supplies department was a change in the character of petitioner's business which would qualify it for relief under section 722 (b) (4), with respect to that segment of its business, if the other requirements of the statute were met. Our crucial questions are whether, with application of the push-back rule, the evidence affords a proper basis for a reconstruction of base period earnings attributable to the hospital supplies department which would result in greater excess profits credits than those allowed by the respondent and, if so, the amount of such constructive average base period earnings.

The gross sales of hospital supplies were approximately $5,000 for the last 6 months of 1936; $13,700 for 1937; $14,300 for 1938; and $19,700 for 1939. After an initial net loss on those sales of $2,544.70 in 1936, there were net profits for 1937, 1938, and 1939 of $142.43, $2,838.26, and $783.78, respectively, without any allocation to that department of officers' salaries and certain other indirect expenses. Officers' salaries amount to over $20,000 for each of those years. With correct accounting, the net profits on the hospital business would have been further reduced. While there was a somewhat constant growth of sales during the 4 base period years, the profits declined substantially in 1939, the fourth year of operations. At the same time, petitioner's over-all net profits for 1939 were more than twice those of 1938. It is apparent from the record of petitioner's actual experience that the time element was not the sole determining factor in the sales or profits of hospital supplies and that a proper adjustment for initial development under the push-back rule would result in but little advantage to the petitioner.

Even if we assume, in application of the push-back rule, that with 2 years of additional experience in manufacturing hospital supplies there would have been a continuing pattern in the growth of sales throughout the base period somewhat similar to that actually experienced, and that petitioner might have reached a 1939 gross sales figure of $30,000 (and in our opinion the record would warrant no greater figure) against actual gross sales of $19,700, we would still be at a loss in reconstructing net profits on these sales. The hospital supplies profits declined from $2,838.26 in 1938 to $783.78 in 1939, while the sales increased from approximately $14,300 in 1938 to $19,700 in 1939. Over $14,000 of the 1939 sales were to the United States Government, and the evidence is that petitioner's margin of profit was smaller on Government sales. This might account for the percentagewise decrease in profits on hospital supplies sales in 1939. The percentage of Government sales to total sales of hospital supplies continued to increase after 1939. There is no evidence on which we can determine to what extent, if any, the actual ratio of 1939 profits to gross sales would have improved with a larger volume of sales.

In its proposed reconstruction, petitioner estimates a 1939 volume of sales of hospital supplies of $65,000 to $66,000, exclusive of all sales to the United States Government. This estimate rests on the opinion of petitioner's principal officer, William W. Stanley, and is not otherwise supported by the evidence. We are not persuaded that the volume of sales would have reached such rosy heights. See *7-Up Fort Worth Co.*, 8 T. C. 52; *Industrial Supplies, Inc.*, 18 T. C. 1067, 1075.

The other evidence before us contains no factual basis for a reconstruction based on increased profits in the hospital supplies department. The excess profits credits computed under section 713 (f), the so-called growth formula, for 1940 and 1941, amounted to $7,263.84 and $8,375.56, respectively, against petitioner's actual average base period net income, as computed under the law applicable to those years, of $3,958.35 for 1940 and $4,517.02 for 1941. Much larger excess profits credits were allowed for the years 1942, 1943, 1944, and 1945 under the invested capital method.

Where the excess profits credits based on a constructive average base period net income are less than those allowed by the Commissioner no relief is available under section 722. *Green Spring Dairy, Inc.*, 18 T. C. 217; *Sartor Jewelry Co.*, 22 T. C. 773.

It is alleged in the petition that "During the base period, the Petitioner changed the character of the business, within the intendment of Section 722 (b) (4) and (b) (5) of the Internal Revenue Code." Petitioner's brief contains no argument relating to, or specific reference to, section 722 (b) (5). Presumably, that issue is no longer pressed. In any event, as there is no evidence before us of any fac-

tors affecting petitioner's base period earnings other than those advanced in support of petitioner's claims under subsection (b) (4), the application of subsection (b) (5) will not be considered. *The Wadley Co.*, 17 T. C. 269; *Granite Construction Co.*, 19 T. C. 163; *Mitchell & Co.*, 20 T. C. 110.

Reviewed by the Special Division.

*Decision will be entered for the respondent.*